UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY GILLIAN and MILENA CESARSKA on
behalf of themselves and all others similarly situated,

Plaintiffs,

-v-

STARJEM RESTAURANT CORP. d/b/a FRESCO
BY SCOTTO,

Defendant.

Case No. 10 cv 6056 (JSR)

ECF Case

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
Attorneys for Defendant

*Of Counsel*
Craig R. Benson
Gary D. Shapiro

# TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ................................................................................ 1

II. STATEMENT OF FACTS ...................................................................................... 2

  A. Operations at Fresco ................................................................................. 3

  B. Tip Pool Operation.................................................................................... 3

  C. Job Duties of Challenged Tip Pool Participants ....................................... 4

    1. Stockers................................................................................... 4

    2. Runner/Expeditors ................................................................. 4

    3. Floor Captains ........................................................................ 5

    4. Party Captains ........................................................................ 5

III. ARGUMENT .......................................................................................................... 6

  A. Standard of Review.................................................................................... 6

  B. Plaintiffs' Claim For Relief For Violations Of The Fair Labor Standards
    Act Fail...................................................................................................... 7

    1. None of the Participants in the Tip Pool are "Employers." ...................... 7

      a. Party Captains Are Not FLSA "Employers." ................................ 8

      b. Floor Captains Are Not FLSA "Employers." ................................ 9

    2. Employees Who Participate In Fresco's Tip Pool Hold Positions
      That "Customarily And Regularly Receive Tips." ................................. 11

    3. Plaintiffs Received All Tip Money Allocated To Them Under the
      Tip Pool.................................................................................... 13

    4. The Restaurant Notifies Tipped Employees That It Claims The Tip
      Credit Against Minimum Wage............................................................... 14

  C. Plaintiffs Cannot State Claims Under The New York Labor Law For
    Illegal Deductions from Gratuities........................................................ 14

# TABLE OF CONTENTS
## (CONTINUED)

PAGE

1.    Plaintiffs' Labor Law §196-d Claims Fail ................................................ 15

      a.    None of the Participants in the Tip Pool Are "Agents" of
            the Employer ................................................................................ 15

      b.    Stockers, Runner/Expeditors, and Party Captains Are
            Service Employees Who Are "Waiters," "Busboys," or
            "Similar Employees." ................................................................... 18

            (1)    The Stocker Position ....................................................... 18

            (2)    The Expeditor/Runner Position........................................ 19

            (3)    The Party Captain Position ............................................. 19

      c.    All Gratuities Received Were Paid To Tipped Employees
            In Their Entirety........................................................................... 20

2.    Plaintiffs' Labor Law §193 Claims Must Fail ......................................... 21

3.    Plaintiffs' Labor Law §198-b Claims Fail .............................................. 22

IV.   CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 247-248 (1986) .......................................................................... 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 249-250 (1986) .......................................................................... 7

*Ayres v. 127 Restaurant Corp.*,
   12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998) ...................................................... 17

*Carter v. Dutchess Community College*,
   735 F.2d 8, 12 (2d Cir. 1984) ............................................................................ 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 322 (1986) ................................................................................... 6

*Chan v. Triple 8 Palace, Inc.*,
   2006 U.S. Dist. LEXIS 15780, *50 at fn 23 (S.D.N.Y. March 30, 2006) ............ 18

*Chan v. Triple 8 Palace, Inc.*,
   2006 U.S. Dist. LEXIS 15780 *52 (S.D.N.Y. March 30, 2006) ........................ 16

*Chan v. Triple 8 Palace, Inc.*,
   2006 U.S. Dist. LEXIS 15780, *67 (S.D.N.Y. March 30, 2006) ....................... 14

*DeLuca v. Atlantic Refining Co.*,
   176 F.2d 421, 423 (2d. Cir. 1949), cert. denied, 338 U.S. 943 (1950) ................. 7

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *5 (S.D.N.Y. Jan. 13, 2011) ............................... 10

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *6 (S.D.N.Y. Jan. 13, 2011) ............................... 10

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *7 (S.D.N.Y. Jan. 13, 2011) ................................. 8

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *8 (S.D.N.Y. Jan. 13, 2011) ................................. 9

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *14 (S.D.N.Y. Jan. 13, 2011) ...................... 8, 9, 17

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *15-16 (S.D.N.Y. Jan. 13, 2011) ....................... 11

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *16-7 (S.D.N.Y. Jan. 13, 2011) ......................... 17

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *20 (S.D.N.Y. Jan. 13, 2011) ................. 9, 13, 19, 20

*Garcia v. La Revise Assocs. LLC*,
   2011 U.S. Dist. LEXIS 3325, *21 (S.D.N.Y. Jan. 13, 2011) ............................... 9

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Garcia v. La Revise Assocs. LLC,*
  2011 U.S. Dist. LEXIS 3325, *22-23 (S.D.N.Y. Jan. 13, 2011) .................................... 10, 17

*Garcia v. La Revise Assocs. LLC,*
  2011 U.S. Dist. LEXIS 3325, *23(S.D.N.Y. Jan. 13, 2011).................................................. 20

*Herman v. RSR Sec. Servs. Ltd,*
  172 F.3d 132, 139 (2d Cir. 1999)................................................................................. 8

*In re Starbucks Employee Gratuity Litig.,*
  264 F.R.D. 67 (S.D.N.Y. 2009) ............................................................................... 16

*In re Starbucks Employee Gratuity Litig.,*
  264 F.R.D. 67, 72 (S.D.N.Y. 2009)........................................................................... 16

*In re Starbucks Employee Gratuity Litig.,*
  264 F.R.D. 67, 72-3 (S.D.N.Y. 2009)........................................................................ 16

*Kilgore v. Outback Steakhouse,*
  160 F.3d 294 (6th Cir. 1998) .................................................................................. 12

*Kilgore v. Outback Steakhouse,*
  160 F.3d 294, 301 (6th Cir. 1998) ........................................................................... 12

*Kilgore v. Outback Steakhouse,*
  160 F.3d 294, 301-2 (6th Cir. 1998) ........................................................................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 586 (1986) (citing *DeLuca v. Atlantic Refining Co.,*
  176 F.2d 421, 423 (2d. Cir. 1949), cert. denied, 338 U.S. 943 (1950) .................................. 7

*Morgan v. Speak Easy LLC,*
  625 F. Supp. 2d 632 (N.D. Ill. 2007) ....................................................................... 10

*Morgan v. Speak Easy LLC,*
  625 F. Supp. 2d 632, 639 (N.D. Ill. 2007) ................................................................. 10

*Morgan v. Speak Easy LLC,*
  625 F. Supp. 2d 632, 653 (N.D. Ill. 2007) ................................................................. 10

*Samiento v. World Yacht Inc.,*
  10 N.Y. 3d 70 (2008) .......................................................................................... 15

*Samiento v. World Yacht Inc.,*
  10 N.Y. 3d 70, 75 (2008)...................................................................................... 21

*Samiento v. World Yacht Inc.,*
  10 N.Y. 3d 70, 79, fn 4 (2008) .............................................................................. 15

*Samiento v. World Yacht Inc.,*
  10 N.Y. 3d 70, 79-80 (2008).................................................................................. 21

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

**Statutes**

12 N.Y.C.R.R. §146-2.14 ................................................................................. 18, 19, 20

29 U.S.C. § 203 ................................................................................................. 7, 11, 14

Fed. R. Civ. P. 56 ............................................................................................... 1, 6, 18

New York Labor Law §193 ............................................................................... 2, 15, 21, 22

New York Labor Law §196-d ............................................................ 2, 15, 16, 17, 18, 21, 22, 23

New York Labor Law §198-b ............................................................................. 2, 15, 22, 23

## I.   **PRELIMINARY STATEMENT**

Defendant Starjem Restaurant Corp. d/b/a Fresco by Scotto ("Fresco" or "the Restaurant") respectfully submits this Memorandum of Law in support of its Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56.

Starjem Restaurant Corp. operates Fresco by Scotto, a full service Italian restaurant in midtown Manhattan.  This action is brought by two individuals – Gary Gillian and Milena Cesarska – who were employed by Fresco as waiters.  Jeff Shaw, the only opt-in putative class member, was also employed as a waiter.  In their Second Amended Complaint, Plaintiffs claim, *inter alia*, that non-service employees, including "agents" of the employer, were permitted, at the Restaurant's direction, to participate in the tip pool, that Fresco retained and/or misappropriated tips to non-service employees, and that the Restaurant failed to distribute to tipped employees the full amount of mandatory gratuities.

The parties engaged in extensive discovery, including seven depositions, the exchange of discovery requests, and the production of thousands of pages of documents.  Now that discovery is complete, it is beyond debate that no employee of the Restaurant who participated in the tip pool (including floor and party captains) has the powers to hire, fire, and discipline accorded to an "agent" under the New York Labor Law, and that they lack the authority of an "employer" under the FLSA.  As such, and because they play an integral role in the service of the Restaurant's patrons, these individuals are proper participants in the tip pool under federal and New York state law.

The claims that the tip pool contains non-service employees is similarly misguided.  The undisputed record evidence establishes that the primary duties of the individuals challenged as non-service employees or non-customary tip pool participants (stocker, runner/expeditor, and party captain) is the provision of customer service to the Restaurant's patrons.

For the following reasons, Defendant respectfully requests that the Court grant its motion for partial summary judgment, which goes to the validity of the tip pool and impacts Plaintiffs' claims for minimum wage violations of the FLSA (First Claim for Relief), as well as claims for violations of New York Labor Law §§196-d, 193, and 198-b (Fifth Claim for Relief).

## II.   **STATEMENT OF FACTS**

Fresco by Scotto is a full service Italian restaurant.   (Defendant's Local Rule 56.1 Statement of Undisputed Material Facts[1] ¶1).   The Restaurant is open for lunch and dinner, Monday through Friday, and for dinner only on Saturday.  (56.1 ¶ 2).  Tipped service employees at the Restaurant pool the tips collected on each shift.[2] (56.1 ¶ 10, 34).  Those dollars are then re-distributed to all of the service employees on the shift – waiters, runners (a subset of which is the "expeditor" runner (hereinafter, "runner/expeditor")), busboys (a subset of which is the coffee man and stocker positions), floor captain(s), and, when there is a private party, a party captain – according to a point system linked to job titles.  (56.1 ¶ 39).  The money is divvied up by the waiters according to the point system.  (56.1 ¶ 41).

Plaintiffs lodge two challenges on the composition of the tip pool:  (1) that floor and party captains should not have been included because they are "agents" of the employer under state law, or "employers" under federal law; and (2) that stockers, runner/expeditors, and party captains should not be permitted to participate because they are non-service employees who are not eligible to receive tips under the state and federal standards.[3]

---

[1]      Defendant's Local Rule 56.1 Statement of Undisputed Material Facts is hereafter cited as follows: "56.1 ¶ __."

[2]      In the vernacular of the restaurant industry, a single meal, be it lunch or dinner, is referred to as "a shift."

[3]      Plaintiffs do not dispute the propriety of the inclusion of waiters, busboys, runners, and

### A.    <u>Operations at Fresco.</u>

The Restaurant is managed by Anthony Scotto.  (56.1 ¶ 3).  Mr. Scotto is the only one at Fresco authorized to hire, fire, and discipline employees.  (56.1 ¶ 3).  Mr. Scotto also retains the power to determine the rates of pay and other terms and conditions for all employees at the Restaurant, and he is the final word on the staff schedule.  (56.1 ¶¶ 3, 27).

### B.    <u>Tip Pool Operation.</u>

The tip pool at Fresco is run by the tipped staff.  (56.1 ¶ 35).  At the conclusion of each shift, the late waiter adds up all of the tips received on the shift, from both restaurant service and private parties.  (56.1 ¶ 34). The individual then fills in the names of people who worked on the shift on a tip out sheet which lists the job classifications that participate in the service and the points allocated to those positions.  (56.1 ¶¶ 36, 37).  Tip money at Fresco is distributed according to the following point system:  1 point for floor and party waiters, .75 point for runners, .6 point for the coffee man, .5 point for busboys (and stockers, who are, in fact, busboys), and 1.5 points for the floor captain.  (56.1 ¶ 39).  The party captain's share is 15% of the tip for a private party.  (56.1 ¶ 40).  The assigned waiter does the math necessary to determine each person's tip entitlement, and then gets cash from the bartender in an amount equal to the tip total so they can make envelopes containing the tips (in cash) for each tip pool participant.  (56.1 ¶¶ 38, 41).  The waiter leaves the completed tip out sheets with the Restaurant so it can declare those sums and have taxes deducted from the tip pool participants' paychecks. (56.1 ¶ 37).

Management does not play any role in the tip pool.  (56.1 ¶ 33).  All money designated as tips, gratuities, and service charges is put into the tip pool, and the pool is paid out in its entirety

---

the coffee men in the tip pool, nor do they challenge that the floor captain is an otherwise valid service oriented position.

to the service employees who participate in it.  (56.1 ¶¶ 10, 33, 42).

### C.  Job Duties of Challenged Tip Pool Participants.

Like at many fine restaurants, multiple employees participate in the service of tables in Fresco's dining room.  (56.1 ¶ 10).  This is also true for private parties.  (56.1 ¶ 10).  Because restaurants are subject to an unpredictable level of customer demand, tipped employees perform a variety of tasks over the course of a shift.  Notably, all of those tasks are focused on the provision of service to patrons.

#### 1.  Stockers.

The stocker position is a subset of the busboy position.  (56.1 ¶¶ 10, 17).  In fact, it is a shift assignment rotated among all of the busboys at the Restaurant.  (56.1 ¶ 17).  Stockers are responsible for ensuring that side stations are adequately stocked with clean dishes and silverware.[4]  (56.1 ¶ 18).  In addition, stockers perform the traditional busboy duties of taking dirty dishes, glasses, and silverware back to the kitchen and ensuring that there are not any items on the side stations that need to be bussed.  (56.1 ¶ 18).  Stockers also spend somewhere between 25% and 50% of their time running appetizers and other food from the kitchen to customers' tables.  (56.1 ¶ 19).  There is not a single aspect of the stocker assignment that is not part of the overall service.  (56.1 ¶¶ 18-20).

#### 2.  Runner/Expeditors.

From time to time, when the Restaurant is extremely busy, a senior runner will work as "expeditor."  (56.1 ¶ 13).  Even on those occasions, the runner/expeditor does not perform the traditional expeditor functions of remaining in the kitchen and ensuring timely delivery of food and garnishing of dishes.  (56.1 ¶ 13).  To the contrary, the reason for the title is that the

---

[4]    Side stations are cabinets in the dining room that hold the clean silverware and dishes.

runner/expeditor stands next to the assigned expeditor and explains to the runners what dishes should be delivered to which seating positions for large tables. (56.1 ¶¶ 13, 14). Throughout the meal, the runner/expeditor, who wears the same style clothing as the other runners, runs food to the dining room floor in the same manner as a runner. (56.1 ¶¶ 14, 15). Notwithstanding the additional responsibilities, a runner/expeditor's primary duty is the same as a runner's – bringing food from the kitchen to customers' tables. (56.1 ¶ 14). A runner/expeditor performs no less time running food than a runner without the additional responsibility. (56.1 ¶ 14).

### 3.    Floor Captains.

Brent Drill is a floor captain at Fresco and participates in the tip pool in that capacity. (56.1 ¶ 22). As a floor captain, Mr. Drill performs the same functions as the wait staff; namely, telling customers the specials, taking food and drink orders, clearing tables, helping with wine sales, and ensuring general customer satisfaction. (56.1 ¶ 21). Mr. Drill provides those services to all of the stations in the dining room. (56.1 ¶ 22). Mr. Drill does not have the authority to hire, fire, or discipline employees, nor does he have the power to set the terms and conditions of their employment. (56.1 ¶¶ 3, 8).

At times, when Mr. Drill is out or the Restaurant is very busy, additional wait staff are engaged by Mr. Scotto to act as floor captains. (56.1 ¶ 23). During those periods, the individuals who act as floor captains wait on tables, assist with wine, and provide direct customer service. (56.1 ¶ 21). Those individuals also lack the authority to hire, fire, and discipline employees, and to set the terms and conditions of other employees' employment. (56.1 ¶ 3).

### 4.    Party Captains.

In addition to dining service, Fresco hosts private parties. (56.1 ¶ 24). A party captain is engaged for those events to take care of the parties. (56.1 ¶¶ 24, 25). Usually, Attilio Vosilla,

Peter Bretz, Marco Barrera, or Desaree Demarie act as party captains. (56.1 ¶ 24). Mr. Vosilla only participates in the tip pool when he serves as party captain at a private party. (56.1 ¶ 26). Mr. Bretz, Mr. Barrera, and Ms. Demarie participate in the tip pool as party captains only when they serve in that position.[5] (56.1 ¶ 26).

The party captain is Fresco's contact person for the host of private parties. (56.1 ¶ 25). He or she is present, and interacts with the host, throughout the party. (56.1 ¶ 25). The captain's responsibilities include helping the party host order wines and food, ensuring that orders are delivered to the right people, dishing out pasta, taking food and drink orders, and making certain the check is correct. (56.1 ¶ 25). Party captains do not have the authority to hire, fire, or discipline employees, nor do they have the power to set the terms and conditions of any employee's employment. (56.1 ¶¶ 3, 7).

## III.   ARGUMENT

### A.   Standard of Review

Fed. R. Civ. P. 56(c) permits entry of summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)(emphasis provided).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[5] They may also serve as waiters, bartenders, and floor captains. (56.1 ¶ 24).

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (2d. Cir. 1949), cert. denied, 338 U.S. 943 (1950).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**B.**     **Plaintiffs' Claim For Relief For Violations Of The Fair Labor Standards Act Fail.**

Plaintiffs allege minimum wage violations of the FLSA in their First Claim for Relief, at least in part on the ground that Fresco should not be able to claim the tip credit against minimum wage under the FLSA.  This claim must fail.

The mandatory or permissive pooling of tips among employees who are "engaged in an occupation in which [they] customarily and regularly receive[] more than $30 a month in tips" is permissible under federal law.  29 U.S.C. §§ 203(t), (m).  When all tips are received and retained by the employee, the pool only includes employees who "customarily and regularly receive tips," and employees are notified that the employer is taking the tip credit, the requirements of the FLSA are satisfied, and the employer is allowed to take a tip credit against minimum wage that would permit it to pay tipped employees an hourly rate lower than the standard minimum wage. *Id.*

Because each of the FLSA's statutory prerequisites is satisfied, Fresco is entitled to take the tip credit, and the portion of Plaintiffs' First Claim for Relief for minimum wage violations concerning Fresco's use of the tip credit should be dismissed.

**1.**     **None of the Participants in the Tip Pool are "Employers."**

Plaintiffs allege that the floor and party captains are "employers" under the FLSA, and

that their participation in the tip pool compromises its validity.  Employer status is determined by consideration of the multiple factored economic realities test which is geared towards measuring the individual's authority (or lack thereof).  When making a determination of "employer" status, the Second Circuit has considered whether the individual in question: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984); *see also Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 139 (2d Cir. 1999).  Although these are among the factors that should be considered, "[n]o one of the four factors standing alone is dispositive.  Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."  *Id.* (internal citations omitted).  Upon consideration of these factors, neither party captains nor floor captains are "employers" under the FLSA.

### a.  Party Captains Are Not FLSA "Employers."

Attilio Vosilla, Peter Bretz, Marco Barrera, and Desaree Demarie all serve as party captains.  (56.1 ¶ 24).  Mr. Vosilla only participates in the tip pool in the limited circumstances when he serves as party captain.  (56.1 ¶ 26).  Messrs. Bretz and Barrera usually serve as waiters, and Ms. Demarie usually serves as a bartender.  (56.1 ¶ 24).

It is well established that a banquet coordinator, which is the functional equivalent of a party captain, is not an "employer" under the FLSA.  In *Garcia v. La Revise Assocs. LLC*, 2011 U.S. Dist. LEXIS 3325, *14 (S.D.N.Y. Jan. 13, 2011), plaintiffs challenged the inclusion of, *inter alia*, banquet coordinators in the restaurant's tip pool on the grounds that they were "employers."  The banquet coordinator in *La Revise* helped plan the party in advance of the event, and on the day of the event, the banquet coordinator greeted and seated guests, coordinated service timing with the kitchen and wait staff, and ensured that the event proceeded

to the customers' satisfaction.  2011 U.S. Dist. LEXIS 3325 at *7.  In addition, the banquet coordinators worked directly with the restaurant's customers.  2011 U.S. Dist. LEXIS 3325 at *8.  The banquet coordinator did not have the authority to hire, fire, or staff employees.  2011 U.S. Dist. LEXIS 3325 at *21.

At Fresco, party captains actually participate in the service more than the banquet coordinators in *La Revise*.  Party captains act as the primary contact for the customer and run the party.  (56.1 ¶ 25).  They help the host order wines and food, coordinate the food orders with the kitchen, ensure the proper service of the food, including physically plating the food, and tend to issues with the check.  (56.1 ¶25).  All of the individuals who serve as party captain lack the power to hire, fire, or discipline employees.  (56.1 ¶¶ 3, 7).  They also do not have the authority to set or control the terms and conditions of employment of other employees.  (56.1 ¶¶ 3, 7).

Because party captains at Fresco deal "directly with the hosts and their guests during the events to ensure their satisfaction," they are not "employers," but rather are part of a category of service employees that "customarily and regularly" participates in a tip pool.  2011 U.S. Dist. LEXIS 3325 at *20.

### b.    Floor Captains Are Not FLSA "Employers."

Brent Drill is the primary floor captain at Fresco.  (56.1 ¶ 22).  When he is unavailable, or when the restaurant is busy, additional individuals are engaged to serve as floor captains.  (56.1 ¶ 23).  As demonstrated below, it is well established that floor captains are proper participants in a tip pool.

In *La Revise*, plaintiffs claimed that captains were "employers," and that they therefore could not participate in the tip pool.  2011 U.S. Dist. LEXIS 3325 at *14.  The job description for the *La Revise* captains stated that the position's job functions included "training, coaching, and counseling the restaurant service team, serving and clearing food and beverage items, setting up

the dining room, printing checks, '[ascertaining] a guest's satisfaction and [handling] any guest issues which may arise, informing a manager of the problem and how it was resolved,' and keeping a daily shift log." 2011 U.S. Dist. LEXIS 3325 at *5. Plaintiffs also asserted that the captains participated in the hiring process, and that captains could adjust employee shares in the tip pool. 2011 U.S. Dist. LEXIS 3325 at *6 After considering the facts, the court held that captains' participation in the tip pool was valid under the FLSA because they did not exercise control over the hiring, firing, or evaluation of employees, and their powers, if any, to adjust points for the tip pool distributions was not discretionary. 2011 U.S. Dist. LEXIS 3325 at *22-3.

The court in *Morgan v. Speak Easy LLC*, 625 F. Supp. 2d 632 (N.D. Ill. 2007), reached a similar result after analyzing the status of senior servers. According to the allegations in that case, senior servers performed the following tasks: directing and supervising employees' work; handling complaints; operating the restaurants' safes; handling money; completing closing forms; sending employees home; informing management when additional staff or supplies were needed; taking inventory; and maintaining the cleanliness of the restaurant. *Id.* at 639. The senior servers also served food and drinks to tables, acted as greeters, and checked on tables during the dinner service. *Id.* Upon consideration of the facts, the court held that senior servers were not "employers," despite their other powers, because they lacked the power to hire, fire, or schedule. *Id.* at 653.

None of the floor captains at Fresco have the power to hire, fire, or discipline employees, or to control the terms and conditions of other employees' employment. (56.1 ¶¶ 3, 8). In fact, the job responsibilities of a Fresco floor captain are much less supervisory in nature than the challenged employees in *La Revise* and *Morgan* who were found to not qualify as "employers," and could lawfully participate in the tip pool. Mr. Drill, who is the primary floor captain, is

responsible for selling wine, helping the wait staff with service, taking orders, explaining the specials, and addressing customer complaints. (56.1 ¶ 21).  Based on those responsibilities, it is indisputable that he is an integral part of the overall service at Fresco.  Indeed, as Plaintiff Gillian, Plaintiff Cesarska, and opt-in Shaw admitted, there is nothing a waiter does from a service perspective that a floor captain does not do.  (56.1 ¶ 21).

Based on the foregoing, the Fresco floor captains do not qualify as an "employer" under the FLSA, and all of them may participate in the tip pool for time spent in those positions.

### 2. Employees Who Participate In Fresco's Tip Pool Hold Positions That "Customarily And Regularly Receive Tips."

Plaintiffs alternatively challenge the inclusion of the stocker, runner/expeditor, and party captain positions in the tip pool on the grounds that they do not qualify as tipped employees.  A "tipped employee" under the FLSA must hold a position that "customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).[6]  Under Section 203(m), the pooling of tips "among employees who customarily and regularly receive tips" is expressly acceptable.  29 U.S.C. §203(m).

When determining whether an individual is in a position that "customarily and regularly receives tips," and therefore qualifies as a "tipped employee," courts have considered the tasks performed by the individual, and his or her of customer interaction.  *See*, e.g., *La Revise Assocs.*, 2011 U.S. Dist. LEXIS 3325 at *15-16 ("In determining whether a participating employee is one who 'customarily and regularly receives tips,' courts in this Circuit and others focus on whether the employee in question is 'part of an occupation that customarily and regularly receives tips,' or whether they have more than 'de minimis' interaction with customers as a part of their

---

[6]     Based on the sums listed on the tip out sheets filled out by the Restaurant's wait staff, it is not disputed that the financial aspects of the "tipped employee" definition are satisfied.

employment.").

In *Kilgore v. Outback Steakhouse*, 160 F.3d 294 (6th Cir. 1998), the court considered whether a host's participation in the restaurant's tip pool was proper. Outback's hosts greeted customers, supplied them with menus, seated them at tables, and occasionally "enhance[d] the wait." *Id.* at 301. The court held that hosts had more than *de minimis* interaction with the customers, unlike dishwashers, cooks or janitors who did not directly relate with customers at all. Based on the customer service tasks Outback's hosts performed, the court determined that they were employees engaged in an occupation that "customarily and regularly" received tips. *Id.* at 301-2.

As stated in Section II.C, above, the stocker position is simply a subset of the busser category. (56.1 ¶¶ 10, 17). Their responsibilities include bringing clean dishes, silverware, and glasses to the side stations, and bringing dirty dishes, silverware, and glasses back to the kitchen. (56.1 ¶ 18). Stockers also spend between 25-50% of their shift running food. (56.1 ¶ 19). The stocker position thus involves spending significantly more than a *de minimis* amount of time on the Restaurant floor participating in the service. (56.1 ¶20). Because stockers are employees that "customarily and regularly" receive tips, the individuals in that position should be permitted to participate in the pool and the Restaurant's claim of the tip credit for pool members is appropriate.

Runner/expeditors are also customer-facing employees who are crucial members of the Restaurant's service team. (56.1 ¶ 10). As stated in Section II.C, the runner/expeditor is not a kitchen-based employee. He is simply a lead runner who, in addition to running food himself, coordinates the service at large tables by ensuring that enough runners leave the kitchen at the same time so that individuals seated at those tables are served properly. (56.1 ¶ 14). His

organizational responsibilities are incidental to his food running responsibilities, and account for a *de minimis* part of his day.  The vast majority of a runner/expeditor's time is spent running food, which is indisputably a major customer service function at a restaurant.  (56.1 ¶ 14).  A runner/expeditor is similar to a waiter or a busboy, and is therefore a position that "customarily and regularly" receives tips.  As such, runner/expeditors should be permitted to partake in the tip pool, and Fresco should be permitted to claim the tip credit for the tip pool participants.

Finally, Plaintiffs challenge the participation of party captains in the tip pool.  As stated above, in *La Revise*, the court held that a banquet coordinator, who served the same day-of-party function as a party captain at Fresco, was an employee that "customarily and regularly" participated in a tip pool because he "dealt directly with the hosts and their guests during the events to ensure their satisfaction."  2011 U.S. Dist. LEXIS 3325 at *20.  Again, party captains at Fresco oversee the service and act as the primary contact for the host of the party.  (56.1 ¶ 25).  The party captain helps the host order wines and food, and works with the kitchen and the wait staff to ensure that the orders are proper and delivered in a timely and accurate manner.  (56.1 ¶ 25).  The party captain assists in the service by taking drink orders and delivering food, and also handles the check.  (56.1 ¶ 25).  Since the time spent by party captains performing their duties requires "more than de minimis customer interaction," their participation in the tip pool is proper under the FLSA, and it does not invalidate Fresco's claim of the tip credit.

### 3.    Plaintiffs Received All Tip Money Allocated To Them Under the Tip Pool.

The late waiters are responsible for the management of the tip pool.  (56.1 ¶ 35).  As stated above, the late waiters fill out the tip out sheet and figure out how much money each participant in the tip pool is entitled to.  (56.1 ¶¶ 35-37).  The late waiters then divide up the money, according to the point system for each position, and place the each participant's share, in

cash, in envelopes.  (56.1 ¶¶ 39, 41).  All monies designated as tips, gratuities, or services charges from private parties and restaurant service are fully distributed to the tip pool.  (56.1 ¶¶ 33, 34, 42).  Because all members of the tip pool are permissible participants, and all monies were paid out, Plaintiffs received all money to which they were entitled under the terms of the tip pool.

> **4.     The Restaurant Notifies Tipped Employees That It Claims The Tip Credit Against Minimum Wage.**

An employer may not claim the tip credit under 29 U.S.C. §203(m) "unless such employee has been informed by the employer of the provisions of this subsection."  Courts that have interpreted this provision have held that an employer does not have to "explain" the provision.  *See,* e.g., *Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *67 (S.D.N.Y. March 30, 2006).

Mr. Scotto informs each employee eligible for the tip pool during the hiring process that they are eligible to receive tips, and that they would be paid at a tipped minimum wage lower than the non-tipped minimum wage.  (56.1 ¶ 45).  In addition, the reduced minimum wage and tips received by each tipped employee are included on their paystubs.  (56.1 ¶ 46).  Therefore, the requirements of 29 U.S.C. §203(m) are satisfied.

Because all of the participants in the tip pool are notified that their employer is taking the tip credit, all of the participants in the tip pool hold positions that "customarily and regularly receive tips," and all tips and gratuities designated for employees were given to them in their entirety, Fresco is entitled to the tip credit against the federal minimum wage and the portion of Plaintiffs' First Claim for Relief making those allegations fail as a matter of law.

> **C.     Plaintiffs Cannot State Claims Under The New York Labor Law For Illegal Deductions from Gratuities.**

Plaintiffs allege that the Restaurant retained, distributed and/or misappropriated the tips

of the putative class to its agents and/or non-service employees. (Compl. ¶¶ 14, 18(h), 25, 26 and 51). Plaintiffs also allege that Fresco illegally retained their tips. (Compl. ¶¶ 14, 18(g), 25, 26, and 51). For the following reasons, Plaintiffs' claimed violations of New York Labor Law §§196-d, 193, and 198-b, to which the allegations set forth above pertain, fail as a matter of law.

### 1. Plaintiffs' Labor Law §196-d Claims Fail.

Under Labor Law §196-d, the "sharing of tips by a waiter with a busboy or similar employee" is expressly permitted. The only limitation is that an "employer or his agent" may not demand or accept, directly or indirectly, any part of the gratuities received by an employee. *Id.* As an initial part of the assessment of the validity of the state claims, it is beneficial to consider the underlying purpose of Labor Law §196-d. In *Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70 (2008), the New York Court of Appeals cited to the statute's bill jacket as a window to the drafters' intent. "The drafters of Labor Law § 196-d sought to end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not to the employer.'" *Id.* at 79, fn 4.

Fresco does not confiscate or retain any gratuities, nor does it require or force the diversion of tips to any of its agents or engage in other conduct the law was passed to prohibit. (56.1 ¶¶ 34, 44). Moreover, none of the participants in the tip pool have the managerial powers that would invalidate their participation, and all of them engage in service that would lead a patron to believe that the participant will share in the tip. (56.1 ¶¶ 3, 7, 8, 21, 25). Because Fresco is not engaged in an "unfair and deceptive practice" of any type, Plaintiffs' Labor Law §196-d claim fails.

### a. None of the Participants in the Tip Pool Are "Agents" of the Employer.

Plaintiffs claim that the Restaurant "illegally distributed Plaintiffs' and the Class

members' tips to Defendants' agents and/or non-service employees." (Compl. ¶¶14; *see also* Compl. ¶¶18(g), (h)). These alleged "agents" are the floor and party captains.

The test for whether an employee qualifies as an "agent" for purposes of Labor Law §196-d was addressed in *In re Starbucks Employee Gratuity Litig.*, 264 F.R.D. 67 (S.D.N.Y. 2009). There, the court considered whether shift supervisors who participated in the tip pool were "agents."[7] *Id.* The *Starbucks* shift supervisors supervised and coordinated baristas (i.e., Starbucks employees working at the counter), opened and closed the store, deposited money in the safe, and oversaw the store in the absence of a store manager or assistant store manager. *Id.* at 72-3.. The court observed that from the body of Labor Law §196-d case law "emerges the proposition that persons without the capacity to hire, fire or discipline other employees, even restaurant staff characterized as senior floor captains and accorded supervisory responsibilities, are not agents for the purposes of Section 196-d, presumably because persons without authority over hiring, firing and other incidents of the employment relationship are not exercising powers relevant to the creation or maintenance of the employment relationship." *Id.* at 72. Upon surveying the applicable precedent, the court held shift supervisors' responsibilities "do not carry the broad managerial authority or power to control employees that courts have held to be sufficient to render an employee 'an employer or [employer's] agent' within the meaning of Section 196-d." *Id.* Further, because shift supervisors spent the majority of their time performing the same work as the people they supervised, and because their additional tasks did

---

[7]     In addition, as noted by the court in *Chan v. Triple 8 Palace, Inc.*, "[t]he test for determining whether an individual qualifies as an 'employer' is the same under the FLSA and New York Labor Law." 2006 U.S. Dist. LEXIS 15780 at *52. Therefore, Defendant respectfully refers the Court to its discussion of "employer" status under the FLSA as further support for its position that no "employer" or "agent" improperly participated in the tip pool.

not constitute an exercise of authority over the creation, terms, or conditions of employment, the court held that they were not "agents" within the meaning of the statutory prohibition. *Id.* at 72-73.

Even more recently, in *La Revise*, plaintiffs claimed that captains were "employers" under the Labor Law.[8] 2011 U.S. Dist. LEXIS 3325 at *14. After considering the duties and functions of those captains, which are discussed above in Section III.B.1, the court held that their participation in the tip pool did not run afoul of the Labor Law because the captains did not exercise control over the hiring, firing, or evaluation of employees, and their powers, if any, to adjust points for the tip pool distributions was not discretionary. *Id.* at *22-3 .

Floor and party captains at Fresco do not have the authority to make hiring, firing, or discipline determinations.[9] (56.1 ¶¶ 3, 7, 8). It is undisputed that Mr. Scotto is the only person empowered to take those actions. (56.1 ¶ 3). Also, floor and party captains engage in the same service functions as the other members of the tip pool. (56.1 ¶¶ 21, 25).

Under the holdings in *Starbucks* and *La Revise*, the floor and party captains' lack of authority to act on hiring, firing, and other personnel decisions, as well as their inability to set terms and conditions of employment, is fatal to Plaintiffs' claim that they are "agents" under the Labor Law.

---

[8]  The *La Revise* court applied the same test when determining whether an individual participating in a tip pool qualified as an "employer" or an "agent" under Labor Law §196-d. 2011 U.S. Dist. LEXIS 3325 at *16-7. *See also Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998) (same).

[9]  Similarly, none of the other individuals who participate in the tip pool are empowered to make such management decisions.

     **b.**     **Stockers, Runner/Expeditors, and Party Captains Are Service Employees Who Are "Waiters," "Busboys," or "Similar Employees."**

Under Labor Law §196-d, the "sharing of tips by a waiter with a busboy or similar employee" is permissible.  As Judge Lynch noted in *Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, *50 at fn 23, the term "similar employee" refers "not only to employees similar to busboys, but also employees similar to waiters."  Plaintiffs' allegations about the invalidity of the tip pool based on the inclusion of non-service employees concerns stockers and runner/expeditors on the basis that they are non-service employees.  Because individuals in those positions are similar to waiters or busboys, they are permitted to participate in the tip pool under Labor Law §196-d.[10]

     **(1)**     **The Stocker Position.**

The stocker position is merely a subset of the busboy category.  (56.1 ¶¶ 10, 17).  Indeed, stockers wear the same style of clothing as busboys.  (56.1 ¶ 17).  The individuals in the stocker position rotate, and when they are not acting as stockers, they are busboys or coffee men.  (56.1 ¶ 17).  Stockers are responsible for ensuring that the side stations on the floor of the Restaurant are properly stocked with clean dishes, glasses, and silverware, so the tables can be promptly re-set between seatings.[11]  (56.1 ¶ 18).  In addition, stockers perform the busboy duties of bringing

---

[10]     Plaintiffs do not dispute that waiters, runners, busboys, and the coffee men are acceptable participants in a tip pool under New York law.  In addition, it is indisputable that floor and party captains participate in the service and are therefore proper participants in the tip pool.

[11]     In that respect, stockers serve the same purpose in the dining room as a barback, a tip eligible position under the Labor Law.  The barback, along with busboys, wait staff, and several other occupations, is an exemplar of an occupation that may participate in a tip pool in the Minimum Wage Order for the Hospitality Industry that went into effect on January 1, 2011.  *See* 12 N.Y.C.R.R. §146.2-14(e)(1), (3), (6).  These regulations do not represent a change in the law, but merely a confirmation of what has always been – that "[e]ligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of

dirty dishes back from the Restaurant floor to the kitchen.  (56.1 ¶ 18).  The stockers also act as additional runners and deliver food from the kitchen to customers for between 25% and 50% of their shift.  (56.1 ¶ 19).  Based on the foregoing, there is no genuine issue of material fact that stockers are employed in a position that provides personal service as part of their primary duty, and that their position is similar to a waiter or busboy.

### (2)   The Expeditor/Runner Position.

On extremely busy occasions, one of the most senior runners may be listed on the schedule as an "expeditor."  (56.1 ¶ 13).  On those days, in addition to his primary function of running food out of the kitchen to the Restaurant floor, he performs the minor administrative function of organizing service at large tables.  (56.1 ¶ 14).  Specifically, the runner/expeditor will tell the other runner what plates to take and which food item was ordered by which seating position.  (56.1 ¶ 14).  This is to ensure that each customer gets what he ordered, and that all food is delivered at around the same time.  (56.1 ¶ 14).  As stated above, the runner/expeditor continues to run food throughout his entire shift.  (56.1 ¶ 14).  Thus, he is more appropriately considered to be a lead runner.  Runner/expeditors are not kitchen-based employees, and their primary duty is the provision of direct customer service.  Moreover, "food runners" are listed in the new Minimum Wage Order as an occupation eligible to receive a distribution from a tip pool.  *See* 12 N.Y.C.R.R. §146-2.14(e).  As such, there is no genuine issue of material fact that runner/expeditors qualify as employees similar to waiters or busboys.  *Id.*

### (3)   The Party Captain Position.

Plaintiffs also challenge the inclusion of party captains on the grounds that they are not service employees.  This argument must fail because party captains are waiters or employees

their duties and is not merely occasional or incidental."  12 N.Y.C.R.R. §146-2.14(e).

similar to waiters.  In *La Revise*, the court held that it was "undisputed that captains and the banquet coordinator had regular interactions with customers in connection with core Restaurant functions.  Captains' duties included ascertaining guest satisfaction and resolving any issues that might arise in that connection; the banquet coordinator dealt directly with private party hosts in advance of events for planning purposes and worked directly with the hosts and their guests during the events to ensure their satisfaction."  2011 U.S. Dist. LEXIS 3325 at *20.  On those grounds, the court held that the inclusion of the captains and banquet coordinator in the restaurant's tip pool was proper under the Labor Law.  *Id.* at *23 .

Party captains at Fresco are responsible for ensuring customer satisfaction at private parties.  (56.1 ¶ 25).  During private functions, the captain is the Restaurant's contact person for the host of the party.  (56.1 ¶ 25) .  The party captains help the party host order wines and food, and they also dish out pasta, ensure that orders are delivered to the right people, and handle the check.  (56.1 ¶ 25) .  Those duties make the captain a hybrid of the captain and banquet coordinator positions found to be proper tip pool participants in *La Revise*.  In addition, as stated above, "captains who provide direct food service to customers" are a sample occupation in the new Minimum Wage Order that is eligible to receive a share from a tip pool.  *See* 12 N.Y.C.R.R. §146-2.14(e).  Based on the foregoing, the party captain's participation in the Fresco tip pool is proper.

<b>c.    All Gratuities Received Were Paid To Tipped Employees In Their Entirety.</b>

Plaintiffs next allege that "Defendant required certain customers to pay a percentage of their bills as a gratuity.  Defendant did not distribute this gratuity in its entirety to tipped employees."  (Compl. ¶ 26).  These allegations are a misguided attempt to establish a claim that service charges and other charges purported to be gratuities were not remitted to the wait staff.

Such allegations are unsupported by any relevant evidence.

In *World Yacht*, the defendant allegedly told its customers that the ticket price to one dinner cruise included the cost of gratuity for the wait staff, and that a 20% "service charge" applied to the price of a different dinner cruise would be remitted as gratuity to the wait staff. 10 N.Y.3d at 75.  The court found that those payments constituted "charge[s] purported to be a gratuity" under Labor Law §196-d because a "reasonable patron" would believe that the employer was collecting a service charge in lieu of a gratuity. *Id.* at 79-80 .

Regardless of what the amounts customers leave in addition to food costs are called, and regardless of whether Fresco required them to be left, *World Yacht* has no application here.  All service charges, tips, and gratuities, without any reduction of any kind, were included in the tip pool and distributed to tipped employees according to the governing point system. (56.1 ¶¶ 33, 34, 39, 42).  There is no evidence to the contrary.  Because Fresco did not retain any of those sums, and all of the participants in the tip pool were entitled to share, Plaintiffs cannot establish a Labor Law §196-d claim under any theory that all gratuities were not distributed.

### 2.    Plaintiffs' Labor Law §193 Claims Must Fail.

Plaintiffs additionally assert a claim pursuant to Labor Law §193.  Labor Law §193 applies to permissible deductions and provides in pertinent part as follows:

> § 193. Deductions from wages. 1.  No employer shall make any deduction from the wages of an employee, except deductions which:
>
>> a.  are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>>
>> b.  are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare

> benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.

As a general proposition, Labor Law §193 does not apply to the instant case because no deductions have been made from any wages, and Fresco has not made any charges against wages, or required an employee to make any unauthorized payment by separate transaction, as is prohibited by Labor Law §193(2). In fact, all that has occurred is the pooling of tips in compliance with Labor Law §196-d.

Moreover, even assuming, *arguendo*, that the redistribution of tips through a valid tip pool is a "deduction," as that term is contemplated by Labor Law §193, and also assuming, *arguendo*, that tips are wages, Fresco complied with Labor Law §193 because deductions "made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency" are permissible. *See* N.Y. Lab. Law §193(1)(a). Plaintiffs' reading of Labor Law §193 would lead to an illogical result – using one section of the Labor Law to prohibit what another section (Labor Law §196-d) expressly permits.

In total, Plaintiffs' attempt to shoehorn their flawed tip pooling claim into the protections of the New York deduction statute should be rejected as an attempt to take two bites at the apple on their tip pooling claim.

### 3.    Plaintiffs' Labor Law §198-b Claims Fail.

Plaintiffs next claim a violation of Labor Law §198-b. As is relevant to Plaintiffs' allegations, Labor Law §198-b provides that it is unlawful for any person "to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand

will prevent such employee from procuring or retaining employment."

Although Plaintiffs cited Labor Law §198-b in the header of their Fifth Claim for Relief, they failed to plead any of the necessary elements of a cause of action for violation of that statute. Plaintiffs have not established that Mr. Scotto, who is the only person with power over employment decisions at Fresco, made clear a "statement, representation, or understanding" that a kick-back had to be made (and, to be certain, there was no such statement, representation, or understanding) to remain employed. Nor have Plaintiffs offered any evidence that any other empowered party made such a statement or representation, or created such an understanding. Mr. Scotto's statement that there were no such threats is the only evidence and it is undisputed. (56.1 ¶ 44).

More importantly, Labor Law §198-b is not intended to address wage disputes of the type alleged in this matter. Based on its plain reading, Labor Law §198-b is an anti-extortion statute intended to prevent abuses whereby employees had to pay their supervisors a bribe to keep their jobs. This matter concerns the validity of a tip pool, not an extortion system. As stated in the sections above, tips were pooled among employees permitted to participate in the pool under Labor Law §196-d. Fresco did not retain any sums designated for employees, nor did it operate a forced patronage scheme where employees had to make financial contributions to remain employed. Therefore, this portion of Plaintiffs' Fifth Claim for Relief also fails as a matter of law.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Starjem Restaurant Corp. respectfully requests that the Court dismiss Plaintiffs' First and Fifth Claims for Relief and grant such other and further relief as the Court deems appropriate.

Date:   March 18, 2011
        New York, New York

_____
Craig R. Benson
Gary D. Shapiro
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600
Attorneys for Defendant
Starjem Restaurant Corp.

Firmwide:100734720.1 067257.1001