UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY GILLIAN and MILENA CESARSKA on
behalf of themselves and all others similarly situated,

Plaintiffs,

-v-

STARJEM RESTAURANT CORP. d/b/a FRESCO
BY SCOTTO,

Defendant.

Case No. 10 cv 6056 (JSR)

ECF Case

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF STATE LAW CLAIMS PURSUANT TO FED. R. CIV. P. 23

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
Attorneys for Defendant

*Of Counsel*
Craig R. Benson
Gary D. Shapiro

## TABLE OF CONTENTS

**PAGE**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT...............................................................................................................2

    A.     Plaintiffs Cannot Satisfy The Class Action Prerequisites Under Fed. R. Civ. P. 23(a)......................................................................................................2

        1.     Joinder Is Practicable..............................................................................3

        2.     Plaintiffs Are Inadequate Class Representatives. .......................................5

    B.     Class Treatment Under Fed. R. Civ. P. 23 (b)(3) Is Inappropriate........................6

        1.     Individual Questions of Fact Predominate Over Common Ones ..............7

        2.     Judicial Economy Would Not Be Served By Permitting This Matter To Be Litigated As A Class Action ..............................................13

    C.     Fed. R. Civ. P. 23 Actions and 29 U.S.C. § 216(b) Collective Actions Are Inherently Incompatible........................................................................................15

III.   CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Brzychnalski v. Unesco, Inc.*,
  35 F. Supp. 2d 351 (S.D.N.Y. 1999) .................................................................16

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 615 (1997) ..............................................................................7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 623-24 (other citation omitted)...........................................7, 8

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81, 86 (S.D.N.Y. 2001) ..............................................................12

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81, 89 (S.D.N.Y. 2001) ..............................................................13

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91, 104 (2d Cir. 2007)
  (quoting *Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 615 (1997) .............................................................................7

*Deen v. New Sch. Univ.*,
  05 Civ. 7174 (KMW), 2008 U.S. Dist. LEXIS 7846, *9
  (S.D.N.Y. Feb. 4, 2008)................................................................................4

*East Texas Motor Freight Sys., v. Rodriguez*,
  431 U.S. 395, 403 (1977) ..............................................................................5

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................11

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174, 179 (W.D.N.Y. 2005) ........................................................11

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174, 183 (W.D.N.Y. 2005) ........................................................11

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147, 160 (1982) ...............................................................................2

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147, 161 (1982) ...............................................................................2

*Harris v. Initial Sec., Inc.*,
  05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397, *21
  (S.D.N.Y. Mar. 7, 2007)................................................................................6

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007).................................................................16

*In re Top Tankers, Inc. Sec. Litig.*,
  06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008)
  (citing *In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124, 136 (2d Cir. 2001) ..................................................................7

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124, 136 (2d Cir. 2001) .................................................................7

*LeGrand v. New York City Transit Auth.*,
   95-CV-0333 (JG), 1999 U.S. Dist. LEXIS 8020, *12
   (E.D.N.Y. May 26, 1999) ..........................................................................3

*Maneely v. City of Newburgh*,
   208 F.R.D. 69, 76 (S.D.N.Y. 2002)
   (quoting *Amchem Prods., Inc.*,
   521 U.S. at 623-24) (other citation omitted) .................................................7

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247, 1252 (2d Cir. 2002) .............................................................7

*Moore v. Trippe*,
   143 F. Supp. 201, 211 (S.D.N.Y. 1990) ........................................................4

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .................................................................8, 11

*Myers v. Hertz Corp.*,
   624 F.3d 537, 549 (2d Cir. 2010) ................................................................8

*Powers v. Centennial Communs. Corp.*,
   679 F. Supp. 2d 918 (N.D. Ind. 2009) .........................................................15

*Primavera Familienstiftung v. Askin*,
   178 F.R.D. 405, 410 (S.D.N.Y. 1998) ..........................................................3

*Riddle v. Nat'l Sec. Agency, Inc.*,
   No. 05 C 5880, 2007 U.S. Dist. LEXIS 68842, *84
   (N.D. Ill. September 13, 2007) ..................................................................15

*Robidoux v. Celani*,
   987 F.2d 931, 936 (2d Cir. 1993) ................................................................3

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F. 2d 590, 597 (2d Cir. 1986) ...............................................................2

*Salazar v. AgriProcessors, Inc.*,
   No. 07-CV-1006-LRR, 2007 U.S. Dist. LEXIS 78222, *34
   (N.D. Iowa October 22, 2007) ..................................................................15

*Seymour v. McLane Co.*,
   EDCV-08-07-SGL (JCRx), 2009 U.S. Dist. LEXIS 125313
   (C.D. Cal. Mar. 30, 2009) ........................................................................8

*Seymour v. McLane Co.*,
   EDCV-08-07-SGL (JCRx), 2009 U.S. Dist. LEXIS 125313, *5
   (C.D. Cal. Mar. 30, 2009) ........................................................................8

*Seymour v. McLane Co.*,
   EDCV-08-07-SGL (JCRx), 2009 U.S. Dist. LEXIS 125313, *14-15
   (C.D. Cal. Mar. 30, 2009) ........................................................................8

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.*,
  Docket No. 10-1884 ...................................................................................16

*Sheehan v. Purolator, Inc.*,
  839 F.2d 99, 103 (2d Cir. 1988)
  (citing *Rossini v. Ogilvy & Mather, Inc.*,
  798 F. 2d 590, 597 (2d Cir. 1986)) ...............................................................2

*Torres v. Gristede's Operating Corp.*,
  04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039
  (S.D.N.Y. Sept. 28, 2006)..........................................................................16

*Universal Calvary Church v. City of New York*,
  177 F.R.D. 181, 183 (S.D.N.Y. 1998) ............................................................4

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709
  (S.D.N.Y. Jan. 19, 2005) ...........................................................................10

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709, *2
  (S.D.N.Y. Jan. 19, 2005) ...........................................................................10

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709, *18
  (S.D.N.Y. Jan. 19, 2005) ...........................................................................11

*Velez v. Majik Cleaning Serv., Inc.*,
  03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709, *19 at Fn. 43
  (S.D.N.Y. Jan. 19, 2005) ...........................................................................11

*Webb v. Merck & Co.*,
  206 F.R.D. 399, 408 (E.D. Pa. 2002)
  (citing *East Texas Motor Freight Sys., v. Rodriguez*,
  431 U.S. 395, 403 (1977) ............................................................................5

**FEDERAL RULES**

Fed. R. Civ. P. 23 (a)(1) ................................................................................1, 5

Fed. R. Civ. P. 23 (a)(1), (2), and (4) ..................................................................1

Fed. R. Civ. P. 23 (a)(4) ....................................................................................5

**STATUTES**

N.Y. Lab. Law § 663 .........................................................................................4

**TREATISES**

1 A. Conte & H. Newberg, Newberg on Class Actions, at § 3.06 (4th ed. 2002).........................3

## I.   PRELIMINARY STATEMENT

On March 18, 2011, Plaintiffs filed two motions – to conditionally certify their claims under the federal Fair Labor Standards Act ("FLSA") as a collective action pursuant to 29 U.S.C. §216(b), and to certify their claims under the New York Labor Law as a class action pursuant to Fed. R. Civ. P. 23(b)(3).  Defendant Starjem Restaurant Corp. ("Fresco") submits this opposition to Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23.

In Plaintiffs' Fed. R. Civ. P. 23 motion, they seek to have certified their New York Labor Law claims that Fresco: (i) failed to pay tipped employees at the minimum wage for all hours of work (Plaintiffs' Third Claim for Relief); (ii) failed to pay tipped employees time-and-a-half the minimum wage for all overtime hours worked (Plaintiffs' Fourth Claim for Relief); (iii) illegally retained and/or distributed tipped employees' tips to its managers and non-service employees (Plaintiffs' Fifth Claim for Relief); (iv) failed to pay the spread of hours premium (Plaintiffs' Sixth Claim for Relief); and (v) failed to reimburse tipped employees for the cost of uniforms and for laundering uniforms (Plaintiffs' Seventh Claim for Relief).  Plaintiffs seek to include as class members all waiters, busboys, runners, and bartenders employed by Fresco from August 12, 2004 to the present.  (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification of State Law Claims Pursuant to Fed. R. Civ. P. 23 ("Pl. Br.") at p. 1).

It is Fresco's position that the class certification must fail for several reasons.  First, for Plaintiffs' Third, Fourth, Fifth[1], Sixth, and Seventh Claims for Relief, Plaintiffs cannot satisfy, in various combinations, the prerequisites to a class action set forth at Fed. R. Civ. P. 23 (a)(1), (2), and (4), specifically joinder being impracticable, questions of law or fact common to the class, and the representative parties adequately protecting the interests of the class.  Second, even if

---

[1]   We note for the Court that Fresco has a pending motion for summary judgment which addresses, in part, Plaintiffs' Fifth Claim for Relief.

Plaintiffs could satisfy all of the prerequisites (which they cannot), individualized issues would predominate over common ones if those claims for relief were tried on a class basis, and Plaintiffs therefore cannot satisfy the exacting standards of Fed. R. Civ. P. 23(b)(3). As such, class treatment of Plaintiffs' Third, Fourth, and Sixth Claims for Relief is improper. Third, "hybrid actions," where an FLSA opt-in collective action and a state law Fed. R. Civ. P. 23 opt-out class action are prosecuted side-by-side, are inherently incompatible and should not be permitted to proceed.

Accordingly, Plaintiffs' motion for class certification should be denied.

## II.   ARGUMENT

### A.   Plaintiffs Cannot Satisfy The Class Action Prerequisites Under Fed. R. Civ. P. 23(a).

For a matter to proceed as a class action, a plaintiff must satisfy the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), the U.S. Supreme Court held that the prerequisites to a class action under Rule 23(a) cannot be presumed. Rather, a "rigorous analysis" is required. *Id* at 161 . Generally, courts have been strict in their application of Fed. R. Civ. P. 23 (a)'s criteria. *Sheehan v. Purolator, Inc.*, 839 F.2d 99, 103 (2d Cir. 1988) (citing *Rossini v. Ogilvy & Mather, Inc.*, 798 F. 2d 590, 597 (2d Cir. 1986)). Because Plaintiffs cannot satisfy Fed. R. Civ. P. 23's first and fourth prerequisites, their motion for class certification must fail.

1.      **Joinder Is Practicable.**

Plaintiffs focus their Fed. R. Civ. P. 23 (a)(1) analysis solely on numerosity, and they ignore the second half of the equation – that the class be so numerous that joinder of all members is impracticable.  Class certification of Plaintiffs' New York Labor Law claims should be denied because Plaintiffs cannot meet their burden of proving impracticability of joinder.

When determining whether joinder is impracticable under Fed. R. Civ. P. 23 (a)(1), courts look at factors including judicial economy, geographic dispersement of class members, size of individual claims, financial resources of class members, ability of claimants to institute individual suits, and requests for prospective injunctive relief involving future class members.  1 A. Conte & H. Newberg, Newberg on Class Actions, at § 3.06 (4th ed. 2002); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *LeGrand v. New York City Transit Auth.*, 95-CV-0333 (JG), 1999 U.S. Dist. LEXIS 8020, *12 (E.D.N.Y. May 26, 1999); *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998).

As stated above, in addition to seeking class certification of their New York state law claims, Plaintiffs are seeking conditional certification of their FLSA claims.  *See* Docket at Entry Nos. 39-40, 43-47.  In Fed. R. Civ. P. 23 class actions, putative class members (post-certification) are deemed a part of the class unless and until they "opt-out."  FLSA collective actions, which are brought pursuant to 29 U.S.C. § 216(b), require putative class members (post-certification) to join the lawsuit by "opting-in."  The FLSA's opt-in procedure is, in function, a joinder system.  Thus, by pursuing their federal claims on a collective action basis, Plaintiffs have conceded that joinder is, indeed, practicable, and a satisfactory method of addressing their state law wage allegations.

For geography to weigh in Plaintiffs' favor, they must show that putative class members reside in far flung locations that make joinder into a single action impracticable.  *Deen v. New*

*Sch. Univ.*, 05 Civ. 7174 (KMW), 2008 U.S. Dist. LEXIS 7846, *9 (S.D.N.Y. Feb. 4, 2008). The purported class in this matter is not nationwide, or even state-wide; Fresco by Scotto is a single-location restaurant in Manhattan.  It is likely that the vast majority of individuals with claims against Fresco reside in the New York City metropolitan area.  Thus, geographic considerations do not dictate in favor of joinder being impracticable. *See Universal Calvary Church v. City of New York*, 177 F.R.D. 181, 183 (S.D.N.Y. 1998) (finding joinder not impracticable when class members substantially lived and worked within New York City and Nassau County); *Moore v. Trippe*, 143 F. Supp. 201, 211 (S.D.N.Y. 1990) (finding no geographic dispersion and denying certification where members resided in "the Metropolitan New York area").

Furthermore, Plaintiffs are not seeking pennies as recovery for their claims.  If putative class members were to bring separate actions, they may be entitled to recover thousands of dollars, depending on their length of employment.  Successful plaintiffs would also be entitled to attorneys' fees (which is likely the reason, at least in part, that wage claims, large and small, form a substantial part of the dockets of the federal and state courts in New York), and their counsel would likely seek the imposition of liquidated damages, as Plaintiffs' counsel does here. *See* N.Y. Lab. Law § 663.  In addition, even though the putative class members consistently earn high wages, it is common for attorneys bringing wage claims to do so on a contingency basis, under which the attorney receives 1/3 of any recovered amount.  Indeed, according to paragraph 24 of Plaintiffs' proposed notice of pendency, Plaintiffs' counsel in this matter may recover on such a basis if their 1/3 share exceeds the full amount of attorneys' fees awarded by the Court and paid by Fresco.  As such, the financial resources of putative class members to sue on an individual basis is a non-issue, and joinder remains a viable option.

Based on the foregoing, Plaintiffs cannot satisfy Fed. R. Civ. P. 23 (a)(1)'s requirement that "the class is so numerous that joinder ... is impracticable," and Plaintiffs should not be permitted to proceed on a class basis on any of their New York state law claims for relief.

### 2.   Plaintiffs Are Inadequate Class Representatives.

According to Fed. R. Civ. P. 23 (a)(4), "the representative parties" must "fairly and adequately protect the interests of the class." Plaintiffs cannot satisfy this requirement with regard to their Fifth Claim for Relief (non-service employees participating in the tip pool).[2]

Plaintiffs Gillian and Cesarska, both of whom are former waiters, are seeking to proceed as a Rule 23 class on a number of claims, including the assertion that the stocker and expeditor positions were not legally permitted to participate in the tip pool. (Pl. Br. at pp. 2, 18). The stocker position is an assignment rotated among busboys. Similarly, the expeditor position is an assignment rotated among runners ("runner/expeditor"). Thus, as Plaintiffs acknowledge, the same people who act as busboy act as stocker, and the same people who act as runner act as runner/expeditor. (Pl. Br. at p. 12). Plaintiffs are thus seeking to represent the same group of individuals who they allege, at least when they are performing the stocker and runner/expeditor assignments, were not properly participating in the tip pool.

To satisfy the requirements of Fed. R. Civ. P. 23 (a)(4), "[a] class representative must possess the same interest and suffer the same injury as the class members." *Webb v. Merck & Co.*, 206 F.R.D. 399, 408 (E.D. Pa. 2002) (citing *East Texas Motor Freight Sys., v. Rodriguez*, 431 U.S. 395, 403 (1977)). The interests of Plaintiffs (who are former waiters) are not aligned with the busboys and runners they seek to include in the class. Many of the busboys and runners who are putative class members are still employed by Fresco. If Plaintiffs prevail on their theory

---

[2]  Fresco acknowledges that there is no similar conflict among the putative class with regard to the portion of Plaintiffs' Sixth Claim for Relief that challenges the participation of agents of the employer participating in the tip pool.

of the case, they win no matter what, while currently employed busboys and runners would lose income on days when they serve as stockers or runner/expeditors. Because those busboys and runners are the very same individuals who also serve as stockers and expeditor/runners, respectively, their interests in litigating the validity of the tip pool are different than the waiters who are steering this litigation.

Because "Plaintiffs[] cannot be counted on to adequately protect other potential class members who might have claims that differ from Plaintiffs," they are not adequate class representatives, and Plaintiffs' motion for class certification with regard to their Fifth Claim for Relief should be denied. *Harris v. Initial Sec., Inc.*, 05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397, *21 (S.D.N.Y. Mar. 7, 2007).

### B.    Class Treatment Under Fed. R. Civ. P. 23 (b)(3) Is Inappropriate.

In addition to satisfying the requirements discussed in Section II.A, above, a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b). Assuming Plaintiffs can satisfy Fed. R. Civ. P. 23 (a) for their Third, Fourth, and Sixth Claims for Relief, those claims still should not be certified because Plaintiffs cannot satisfy Fed. R. Civ. P. 23(b)(3), their stated basis for class treatment. (Pl. Br. at p. 21).[3]

According to Fed. R. Civ. P. 23(b)(3), a class action may be maintained where:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The requirement of Fed. R. Civ. P. 23 (b)(3) is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be

---

[3] If Plaintiffs can satisfy Fed. R. Civ. P. 23**Error! Bookmark not defined.**(a)'s requirements for their Fifth and Seventh Claims for Relief, Fresco acknowledges that they are proper for class certification.

achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Stated another way, the purpose of Fed. R. Civ. P. 23(b)(3) is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

Assuming, *arguendo*, that Plaintiffs can satisfy the Fed. R. Civ. P. 23 (a) prerequisites to a class action, their motion still must fail because certification of this action would not serve the policy objectives stated above and they cannot satisfy the requirements of Fed. R. Civ. P. 23(b)(3).

### 1.    Individual Questions of Fact Predominate Over Common Ones.

Fed. R. Civ. P. 23 (b)(3)'s predominance requirement is "more stringent" and "far more demanding than" the commonality requirement of Fed. R. Civ. P. 23(a). *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y. 2002) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623-24) (other citation omitted). Even assuming, *arguendo*, that Plaintiffs' motion meets the commonality standard of Fed. R. Civ. P. 23(a)(2), it cannot satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3).

Predominance is shown if the issues in the purported class action are subject to some "generalized proof" and predominate over those issues subject to individualized proof. *In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). As the U.S. Supreme Court held in *Amchem Prods.*, "[t]he Rule 23(b)(3) predominance inquiry

tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 623.

Plaintiffs seek recovery for violations of New York law concerning, *inter alia*, minimum wage, overtime, and spread of hours pay. They allege that class treatment is appropriate simply because of various Fresco payroll policies. Fresco's pay rules, in a vacuum, do not necessarily lead to illegal results, and the fact that Fresco had rules *does not* mean that it automatically violated New York's minimum wage, overtime, and spread of hours requirements with regard to each (or any) of the putative class members. Rather, to make a liability determination, the Court must analyze each individual's working patterns and experiences on a case-by-case basis.

Courts throughout the country have recognized that the inherently individualized nature of wage claims brought as class actions pursuant to Fed. R. Civ. P. 23 make them ill-suited for class treatment. For example, in *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), the Second Circuit upheld an Eastern District of New York court's denial of class certification on a Rule 23 action alleging a blanket misclassification of station managers. In reaching its decision, the court noted that the exemption inquiry requires examination of the duties the employee actually performs. *Id.* at 549. Even though there was a common exemption policy, the court held that such a fact "does not establish whether all plaintiffs were *actually* entitled to overtime pay or whether they were covered by the applicable administrative regulations defining FLSA's exemptions." *Id.* (emphasis provided) .

Similarly, in *Seymour v. McLane Co.*, EDCV-08-07-SGL (JCRx), 2009 U.S. Dist. LEXIS 125313 (C.D. Cal. Mar. 30, 2009), the court denied certification of a class of truck drivers who were allegedly due unpaid wages and damages for meal and rest period violations, inaccurate wage statements, and violations of the state unfair business practices law. Plaintiffs hinged their

unpaid wage claim on a theory that the company's pay formula, which was based on cubic volume freight hauled, miles driven, and number of stops, was faulty because it was based on inaccurate cubic volume measurements. *Id.* at 2009 U.S. Dist. LEXIS 125313, *5. In denying certification, the court held that "it is certainly true that whether the miscalculation was inadvertent error or was the product of fraud is one central issue that is common to all plaintiffs who hauled freight whose cubic volume was understated, but this issue does not predominate over the individualized inquiries into whether each plaintiff was adversely affected by the miscalculation." *Id.* at 2009 U.S. Dist. LEXIS 125313, *14-15. Further, "[t]he products hauled by plaintiffs, the actual cubic volume of those products, and the stated (or misstated) cubic volume of those products, differ as to each and every employee. Resolution of liability of any claims based on misstatements of the cubic volume of certain products – or indeed, misstatements of the cubic volume of all products – is a poor candidate for class-wide adjudication because of the number of individualized variables involved." *Id.* at 2009 U.S. Dist. LEXIS 125313, *15.

The logic of *Myers* and *Seymour* is equally applicable here. Plaintiffs have not alleged, or provided the Court with evidence, that *all* putative class members – tipped waiters, busboys, runners, and bartenders – (i) spent the same amount of time performing pre-meal side work (i.e., folding napkins, folding linens, etc); (ii) spent the same amount of time engaging in a fully relieved, non-compensable meal period; (iii) spent the same amount of time at pre-shift meetings; (iv) stopped serving restaurant customers at the same time; (v) spent the same amount of time performing end-of-shift side work, or even that all putative class members had to perform such end-of-shift side work; (vi) finished end-of-shift paperwork at the same time, or even that all putative class members had to perform such end-of-shift paperwork; (vii) left their shifts at

the same time and they suffered the same harm; and (viii) worked the same or a similar number of shifts, or that they worked enough shifts to come within striking distance of entitlement to statutory overtime or spread of hours pay.  Indeed, the answers to these questions are not even consistent for the same individual, let alone across groups of employees serving in different job positions that have different job responsibilities and perform different customer tasks.

To adjudicate liability in this matter – not damages, as Plaintiffs insist – the finder of fact will be required make determinations of the issues enumerated in the paragraph above *for each putative class member* on a daily and/or weekly basis to decide whether he or she worked enough hours to trigger liability for, *inter alia*, minimum wage, overtime, or spread of hours pay, as there is no common rule or pattern for those issues.  Put another way, a determination that Gary Gillian is owed damages for minimum wage, overtime, or spread of hours violations during a certain day, or a certain week, has absolutely nothing to do with whether Milena Cesarska (or any other waiter, busboy, runner, or bartender, for that matter) is entitled to such a recovery.

Plaintiffs rely on the court's decision in *Velez v. Majik Cleaning Serv., Inc.*, 03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 19, 2005) as support for the proposition that class member damages do not thwart predominance.  It is Fresco's position that *Velez* is distinguishable, and was decided in error.  First, plaintiffs' motion for class certification of their state overtime pay claims was unopposed.  2005 U.S. Dist. LEXIS 709, *2.  As such, plaintiffs' arguments may have been given greater weight than they would have if defendants responded.  Second, when engaging in Fed. R. Civ. P. 23 (b)'s predominance inquiry, the *Velez* court held that "putative class members will present eviden[ce] that they were not paid overtime compensation for hours worked in excess of forty per week or spread-of-hours compensation for work days exceeding ten hours.  Thus, whether Majik and the individual defendants breached

their legal duties under the FLSA and New York Labor Law are issues that predominate in this case." 2005 U.S. Dist. LEXIS 709, *18.  The court indicated that a trial could be bifurcated into liability and damage phases "to sever common liability questions from individual damage issues." 2005 U.S. Dist. LEXIS 709, *19 at fn 43 (internal citations omitted).

Similarly, in *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005), another case cited by Plaintiffs, the plaintiffs sued Kodak on a theory that they were a joint employer with a third-party vendor, and that Kodak was therefore jointly liable for minimum wage and overtime payments. *Id.* at 179.  The parties then agreed to settle the matter on a class-wide basis under Fed. R. Civ. P. 23.  *Id.*  In approving the settlement agreement, the court held that the fact that all members of the class assert that they were not paid overtime for hours worked in excess of forty in a week was sufficient to satisfy Fed. R. Civ. P. 23(b).  The court also discounted the differences in job duties concerning the exempt status of those individuals, an approach disapproved of in *Myers v. Hertz*.  Notwithstanding, the court noted that individualized damage issues would not predominate because "the methodology utilized presumably will be similar or identical: ascertain the appropriate time recording procedures utilized, review the applicable time records and determine the applicable rate of pay from the hourly wage paid each employee." *Id.* at 183.

The motivation behind class litigation is that issues of liability can be determined for an entire class based on the testimony of a few.  Although certain determinations in this matter may be made on a representative basis, such as Plaintiffs' Fifth (whether there were improper participants in the tip pool) and Seventh (whether clothing qualifies as a uniform) Claims for Relief, their other state law claims – minimum wage minimum wage (Third Claim for Relief), overtime (Fourth Claim for Relief), and spread of hours (Sixth Claim for Relief) – cannot be

litigated on the basis of representative proof.  Unlike employees at a grocery store, factory, or power plant, who work true shifts under regimented rules, the number of shifts a Fresco employee works in a day or week, as well as the amount of time employees spend (i) on fully relieved meal periods, performing pre and post-shift side work (to the extent they were required to at all); (ii) at pre-shift meetings; (iii) serving customers; (iv) performing end-of-shift paperwork (to the extent they did at all); or (v) on a shift, generally, differs from employee to employee, and even varies for the same individual from day-to-day or week-to-week.  Thus, the experience of one waiter (or runner, busboy, or bartender) is not common to all waiters (or runners, busboys, or bartenders), nor is a waiter's experience representative of the experience of a busboy, runner, or bartender (nor are their experiences representative of each other's experiences).

Accordingly, by their nature, determinations of whether an individual is entitled to payment for minimum wage, spread of hours, or overtime pay are inherently individualized, and depend on each employee's particular circumstances for each day in the work week and for each week, as no two employees work the same exact number of hours in a day or week.  As a result, the *Velez* court's conclusion that it could adjudicate liability for unpaid overtime and spread of hours pay on a class-wide basis, solely on the testimony of a few putative class members, was made in error.  Furthermore, Fresco does not maintain as sophisticated a time and attendance system like Kodak did in *Frank*.  Because a determination of damages would require an individualized questioning of each opt-in, who are spread across four job titles (waiter, runner, busboy, and bartender) about their comings and goings on each day of their employment over the entire six-year statute of limitations period, *Frank* is not applicable to this matter.

Plaintiffs cite *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y.

2001) for the proposition that "individualized questions concerning the number of hours worked, overtime, etc., will not predominate over the larger question of the case." (Pl. Br. at p. 23). First, we note for the Court that Plaintiffs' citation is to the *Ansoumana* court's Fed. R. Civ. P. 23 (a) analysis, which, as discussed above, is a less vigorous inquiry. As such, the Court should disregard the citation offered by Plaintiffs. Further, the court's Fed. R. Civ. P. 23(b) analysis is not applicable here. In *Ansoumana*, the court analyzed whether the employers' treatment of individuals as independent contractors was proper for class purposes. The court found that "because each proposed Plaintiff class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period," that class certification under Fed. R. Civ. P. 23(b)(3) was appropriate. *Id.* at 89 . In this matter, there is no single determination that could adjudicate the minimum wage, overtime, and spread of hours claims for the putative class members. As discussed above, a trial in this matter would require an intense factual analysis of each employee's work day, on a day by day basis. Thus, the holding from *Ansoumana* does not apply here, and class certification should be denied.

Based on the foregoing, it is clear that individual issues predominate over common ones. As such, Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23 (b)(3), and class certification must be denied.

### 2.   Judicial Economy Would Not Be Served By Permitting This Matter To Be Litigated As A Class Action.

Assuming the Court finds that common issues predominate over individualized ones with respect to liability, the second part of the trial – damages – would be nearly impossible to manage.

A trial in this type of matter would require examination of every witness about every day and week of his or her employment with Fresco. Because Fed. R. Civ. P. 23 class actions use an

"opt-out" mechanism, the class sizes tend to be more robust, and the trial would last for weeks on end. As discussed above, the court would have to go over in painstaking detail, day by day, the work experiences of each waiter, busboy, runner, and bartender employed by Fresco over the past six years that does not opt out of this action. Again, there is no common rule for all of the employees at the restaurant that could circumvent this inquiry. Because the questioning of one witness would have no bearing on the merits of another person's case, this matter is not well suited for representative litigation.

Also, as stated above, putative class members may have substantial individual recoveries if Plaintiffs' theory of the case prevails. The fact that a prevailing individual would be entitled to attorneys' fees and 25% liquidated damages increases the likelihood that his case would be attractive to a prospective attorney. Further, Plaintiffs' counsel are currently working on this case, which only has two plaintiffs, on a contingency basis pursuant to which they receive 1/3 of any recovered amount or the full amount of attorneys' fees awarded by the Court and paid by Fresco, whichever is greater. (*See* Plaintiffs' Proposed Notice, attached as Exhibit A to the Declaration of Michael Palmer, at ¶ 24). As such, an individual or group of individuals would have no difficulty finding counsel, and a class action is not superior to single or multi-plaintiff litigation.

Based on the foregoing, no notion of judicial economy would be served by agglomerating for purposes of trial what are, at base, individualized claims, with individual facts that predominate over common ones. Therefore, a class action *is not* a superior method to adjudicate Plaintiffs' state law claims, and Plaintiffs' motion for class certification should be denied in its entirety.

**C.      Fed. R. Civ. P. 23 Actions and 29 U.S.C. § 216(b) Collective Actions Are Inherently Incompatible.**

For collective actions brought pursuant to § 216(b) of the FLSA, putative class members must affirmatively "opt-in" to be a member of the class and participate in the litigation, while individuals are automatically included in the class in class actions certified under Fed. R. Civ. P. 23 unless they affirmatively "opt out" of the litigation.  The incompatibility between these opt-in and opt-out mechanisms is a "fundamental reason to not mix the two types of actions." *Powers v. Centennial Communs. Corp.*, 679 F. Supp. 2d 918 (N.D. Ind. 2009).

Moreover, if FLSA § 216 opt-in claims and Fed. R. Civ. P. 23 opt-out state law claims are allowed to proceed side-by-side, the notices sent to putative class members would be inherently confusing, with one notice explaining how to back out of the suit and the other providing information on the steps needed to join it.  Many district courts are reluctant to allow certification when putative class members are likely to be confused by the notice.  *See*, e.g., *Powers*, 679 F. Supp. 2d at 928 (denying class certification because, among other reasons, if both federal and state law claims were allowed to proceed, "the necessary notices sent to class members would be inherently confusing"); *Salazar v. AgriProcessors, Inc.*, No. 07-CV-1006-LRR, 2007 U.S. Dist. LEXIS 78222, *34 (N.D. Iowa October 22, 2007) (class notices containing both federal and state law claims "may be confusing to potential class members"); *Riddle v. Nat'l Sec. Agency, Inc.*, No. 05 C 5880, 2007 U.S. Dist. LEXIS 68842, *84 (N.D. Ill. September 13, 2007) (finding that "potential class members would likely be confused by a notice that tells them simultaneously about opting-in and opting-out of claims" and that it is a "compelling" reason for denying class certification based on state law wage claims).  The fact that the § 216(b) opt-in and Fed. R. Civ. P. 23 opt-out mechanisms require different notices to putative class members refutes any notion that convenience will be served by allowing the class to proceed.  For this additional

reason, the Court should deny Plaintiffs' motion for conditional class certification.

Furthermore, the Second Circuit has not yet ruled on whether class certification in a hybrid action is appropriate.[4]   The United States Court of Appeals for the Second Circuit will hear oral argument on that issue in the upcoming months in the matter of *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, Docket No. 10-1884.   To avoid a situation where this Court issues a ruling that may conflict with controlling precedent from the Second Circuit, Fresco respectfully requests that the Court abstain from ruling on Plaintiffs' motion for class certification in this hybrid action until after the Second Circuit rules in *Shahriar*.

---

[4] Fresco recognizes that a number of district courts in the Southern District have rejected this argument and certified hybrid actions. *See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006); and *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999).

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs'

motion for class certification pursuant to Fed. R. Civ. P. 23, or in the alternative, that is abstain

from ruling on Plaintiffs' motion until the Second Circuit rules in *Shahriar v. Smith & Wollensky*

*Restaurant Group, Inc.*[5]

Date:   April 1, 2011          Respectfully submitted,
        New York, New York

                              _____
                              Craig R. Benson
                              Gary D. Shapiro
                              LITTLER MENDELSON
                                A Professional Corporation
                              900 Third Avenue
                              New York, NY  10022.3298
                              212.583.9600

                              Attorneys for Defendant

Firmwide:100758452.5 067257.1001

---

[5] In the unlikely event the Court finds that Fed. R. Civ. P. 23 class certification is appropriate in this case, Defendant respectfully refers the Court to Section II.C of Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification of FLSA Collective Action and for Court Facilitation of Notice for a more comprehensive discussion concerning the inadequacies of Plaintiffs' proposed notice, and the need for negotiation between the parties prior to the issuance of a notice.