UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GARY GILLIAN and MILENA CESARSKA          INDEX NO. 1:10-cv-06056-JSR
on behalf of themselves and others similarly
situated,

        Plaintiffs,

    v.

STARJEM RESTAURANT CORP. d/b/a/
FRESCO BY SCOTTO,

        Defendant.
--------------------------------------------------------x


<u>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>


Michael D. Palmer
JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640

<u>**TABLE OF CONTENTS**</u>

<u>TABLE OF AUTHORITIES</u> ............................................................................ iii

I. PRELIMINARY STATEMENT ................................................................ 1

II. STATEMENT OF FACTS ........................................................................ 2

   A.  DEFENDANT REQUIRED TIPPED EMPLOYEES TO SHARE TIPS
      WITH MANAGERS ATTILIO VOSILLA AND BRENT DRILL ............................. 2

      1.  Mr. Vosilla and Mr. Drill Have Authority to Interview, Hire
         and Fire Employees.................................................................................... 3

      2.  Mr. Vosilla and Mr. Drill Supervise Employees and Control Conditions ............ 3

      3.  Mr. Vosilla and Mr. Drill Handle Employee Scheduling at
         the Restaurant ........................................................................................... 4

      4.  Mr. Vosilla and Mr. Drill are Involved in the Creation and Maintenance
         of Employment Records ............................................................................ 4

      5.  Mr. Vosilla's and Mr. Drill's Compensation ............................................... 5

      6.  Mr. Vosilla's and Mr. Drill's General Duties and Appearance Further
         Evidence That They Are Managers ............................................................ 5

   B.  DEFENDANT REQUIRED TIPPED EMPLOYEES TO SHARE
      EVIDENCE WITH NON-SERVICE EMPLOYEES ............................................. 6

      1.  Stockers................................................................................................... 6

      2.  Expediters ............................................................................................... 6

III. ARGUMENT ......................................................................................... 7

   A.  DEFENDANT VIOLATED THE FLSA BY AVAILING ITSELF OF THE
      TIP CREDIT WHILE REQUIRING TIPPED EMPLOYEES TO SHARE
      TIPS WITH MANAGERS AND NON-SERVICE EMPLOYEES ........................... 7

      1.  Restaurant Managers May Not Participate in the Tip Pool Under the
         FLSA's Requirement That Employers May Not Retain Tips ........................... 9

         a. Defendant Required Tipped Employees to Share Tips with Managers
            in Violation of the FLSA........................................................................ 11

      2.   **Non-Managerial Employees Who Do Not Perform Service During Their Shift May Not Take Part in the Tipped Pool** ............................................... 14

         a. **Defendant Required Tipped Employees to Share Tips with Non-Service Employees** ........................................................................... 15

         1) **Stockers**.................................................................................... 15

         2) **Expediters** ............................................................................... 16

         3) **Stockers and Expediters Dual Jobs**........................................ 17

  B.   **DEFENDANTS MANDATORY TIP POOL IS ILLEGAL UNDER NEW YORK LAW BECAUSE IT INCLUDES MANAGERS**............................................. 19

      1.   **Defendant Required Tipped Employees to Share Tips with Managers in Violation of 196(d)**............................................................................. 21

  C.   **DEFENDANTS MANDATORY TIP POOL IS ILLEGAL UNDER NEW YORK LAW BECAUSE IT INCLUDES NON-SERVICE EMPLOYEES** .............. 22

      1.   **Defendant Required Tipped Employees to Share Tips with Non-Service Employees** ................................................................................... 22

  D.   **THERE ARE GENUINE DISPUTES OVER MATERIAL FACTS** ........................ 23

IV. **CONCLUSION** ....................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES:</u>

*Adler v 20/20 Cos.*, No. 2009-09718, 2011 NY Slip Op 1961 (2d Dep't Mar. 15, 2011) .......... 20

*Alejo v. Darna Rest.,* No. 09 Civ. 5436, 2010 U.S. Dist. LEXIS 133613 (S.D.N.Y. Dec. 17, 2010) ........................................................................................................................ 7

*Ash v. Sambodromo*, 676 F. Supp. 2d 1360 (S.D. Fla. 2009) ........................................... 8, 14, 19

*Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998) ..................................... 9, 10

*Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98 (E.D. Tenn. 1979) ....................................... 16

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ................................................ 20

*Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 30, 2006) ("*Chan I*" ) ................................................................................................ *passim*

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. 7770 (S.D.N.Y. Feb. 1, 2007) ("Chan II") ........................................................................... 10, 20, 22

Chu Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220 (S.D.N.Y. 2002) .................. passim

*Chung v. New Silver Palace Restaurant*. 272 F. Supp. 2d 314 (S.D.N.Y. 2003) ....................... 19

*Dole v. Bishop*, 740 F. Supp. 1221, 1228 (S.D.Miss. 1990) ...................................................... 18

*Dole v. L & J, Inc.*, No. LR-C-89-339, 1990 WL 250980, (E.D. Ark. Mar. 7, 1990) ................ 10

*Duchene v. Michael L. Cetta, Inc.*, No. 06, Civ. 4576(PAC)(GWG) 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ............................................................. 16

*Elkins v. Showcase, Inc.*, 237 Kan. 720 (Kan. 1985) ................................................................ 15

*Fast v. Applebee's Int'l, Inc*., No. 06-4146, 2010 U.S. Dist. LEXIS 19571 (W.D.Mo. Mar. 4, 2010) ....................................................................................... 18

*Franco v. Ideal Mortg. Bankers, Ltd*., No. 07-CV-3956, 2011 U.S. Dist. LEXIS 8591, (E.D.N.Y. Jan. 28, 2011) ..................................................................................... 24

*Fredette v. BVP Management Assocs.*, No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954 (M.D. Fla. July 6, 1995) ..................................................................... 25

*Fowler v Scores Holding Co.*, 677 F Supp 2d 673 (S.D.N.Y. 2009) ............................................ 19

*Gallo v. Prudential Residential Servs.*, Ltd. Pshp., 22 F.3d 1219 (2d Cir. 1994) ........................ 6

Garcia v. La Revise Assocs. LLC, 2011 U.S. Dist. LEXIS 3325
(S.D.N.Y. Jan. 13, 2011) ................................................................................... *passim*

*Hartnett v. Wade-Mark Eleven, Inc.*, 156 A.D.2d 559
(N.Y. App. Div. 2d Dep't 1989) ) ............................................................................ 19

*Herman v. RSR Sec. Servs*. Ltd., 172 F.3d 132 (2d Cir. 1999) ..................................................... 9

*Hodgson v. Frisch's Dixie, Inc.,* 1971 U.S. Dist. LEXIS 12029
(W.D. Ky. Aug. 16, 1971) ..................................................................................... 18

*Holder v. MJDE Venture, LLC,* No. 1:08-CV-2218, 2009 U.S. Dist. LEXIS 111353,
(N.D.Ga. Dec. 1, 2009) ........................................................................................ 25

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141  (2d Cir. 2010) ............................................ 19

*In re Starbucks Emple. Gratuity Litig*, 264 F.R.D. 67, 72 (S.D.N.Y. 2009)  ........................ 21, 22

*Jiao v. Chen*, No. 03Civ.0165(DF), 2007 U.S. Dist. LEXIS 96480
(S.D.N.Y. Mar. 30, 2007) ..................................................................................... 10

Kilgore v. Outback Steakhouse of Florida, Inc., 160 F. 3d 294 (6th Cir. 1998)  .................. 14, 25

*Kwee Ling Tan v. Mr. Pi's Sushi, Inc*., No. 09-1579, 2010 U.S. Dist. LEXIS 134769,
(D.N.J. Dec. 21, 2010) ........................................................................................ 24

*Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 710 (S.D.N.Y. 2007) ............................... 21, 25

*Marshall v. Krystal Co.*, 467 F. Supp. 9 (E.D.Tenn. 1978) ......................................................... 16

*Morgan v. Speak Easy, LLC*, 625 F. Supp. 2d 632 (N.D. Ill. 2007) ....................................... 12, 13

*Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999) .................................................. 8, 17

NLRB v. Big Three Indus. Gas & Equip. Co., 579 F.2d 304 (5th Cir. 1978) ............................... 10

*Owens v. University Club of Memphis,* No. 02A01-9705-CV-00103, 1998 Tenn. App.
LEXIS 688(Ct. App. Tenn. Oct. 15, 1998) ............................................................... 16

*Pedigo v. Austin Rumba, Inc*., 722 F. Supp. 2d 714 (W.D.Tex. 2010) ............................. 11, 15, 16

*Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, (S.D.Tex. Apr. 21, 2010) .................................................................................................. 19

*Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 U.S. Dist. LEXIS 52568, (S.D.Tex. July 9, 2008) ........................................................................................... 8, 17

*Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001) ................................................ 15

Samiento v. World Yacht Inc., 10 N.Y.3d 70 (2008) ................................................................ 21

*Spicer v. Pier Sixty LLC,* 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................ 24

Sec. Ins. Co. v. Old Dominion Freight Line, Inc., 391 F.3d 77 (2d Cir. 2004) ........................... 7

Tandoor Restaurant, Inc. v. Commissioner of Labor, Docket No. PR-82-85, (Dec. 23, 1987) ..................................................................................................... 22

*Vivenzio v. City of Syracuse*, 611 F.3d 98 (2d Cir. 2010) ........................................................ 7

*Wajcman v. Inv. Corp. of Palm Beach*, 2008 U.S. Dist. LEXIS 21939, (S.D. Fla. Mar. 20, 2008) ............................................................................................ 8, 14

*Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-M, 2009 U.S. Dist. LEXIS 56957, (N.D. Tex. Feb. 9, 2009) ................................................................................ 14, 15

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003) ................................................ 10, 24

## **STATUTES:**

29 U.S.C. § 201 *et seq.* ("FLSA") ..................................................................................... *passim*

29 U.S.C. § 203(m) ..................................................................................................... 7

29 U.S.C. § 206 ........................................................................................................ 7

N.Y. Labor Law § 2(8-a) ............................................................................................. 20

N.Y. Labor Law § 196-d ................................................................................... 20, 21, 22

N.Y. Labor Law § 215 ................................................................................................ 20

## **REGULATIONS:**

N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.9 (2011)............................................................... 23

N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.14 (2011) .......................................................... 23

## **RULES:**

Fed. R. Civ. P. 56(a) ................................................................................................................... 6

29 C.F.R. § 531.57 ..................................................................................................................... 14

29 C.F.R. 531.56(e) ................................................................................................................... 17

## **ADMINISTRATIVE MATERIALS:**

N.Y.D.O.L. Op. Ltr. (Sept. 23, 1997) ....................................................................................... 20

N.Y.D.O.L. Op. Ltr. (Aug 27, 1999) ......................................................................................... 23

U.S.D.O.L. Op. Ltr., 1997 DOLWH LEXIS 55 (Nov. 4, 1997) ........................................... 15, 16

U.S.D.O.L. Op. Ltr., 1985 DOLWH LEXIS 9 (Dec. 20, 1985) .................................................. 18

Plaintiffs Milena Cesarska and Gary Gillian submit this memorandum in opposition to Defendant's Motion for Partial Summary Judgment ("Def's Motion").

## I.    PRELIMINARY STATEMENT

Plaintiffs brought this action on behalf of all non-exempt employees of Defendant Starjem Restaurant Corp. d/b/a Fresco by Scotto who worked in any tipped position, including, without limitation, waiters/servers, bussers, runners and bartenders.  Amongst their claims, Plaintiffs allege that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law by illegally retaining and/or distributing tipped employees' tips to Defendant's managers and non-service employees and taking a tip credit which they were not entitled to as a result of the improper distribution of tipped employees' tips.

Arguing that there is no genuine issue of material fact and that all individuals who took a portion of tipped employees' tips were eligible to do so, Defendant has moved for partial summary judgment.[1]  However, Defendant's motion fails on the law, as well as the fact that there are genuine disputes of material facts.

Under both the FLSA and the New York Labor Law, a tipped employee may not be compelled to share her tips with either non-service staff or managerial employees.  Ignoring these statutes, Defendant utilized customers' tips to subsidize the salaries of non-tipped employees, including: stockers, expediters, and managers.  As a result, Fresco tipped employees are entitled to a disgorgement of the tips illegally taken by the restaurant as well as the

---

[1] Defendant has not moved for summary judgment on Plaintiffs' claims that Defendant: (1) failed to properly pay its tipped employees for all time worked; (2) failed to pay tipped employees the minimum wage for all hours worked; (3) failed to properly pay overtime for hours worked in excess of forty (40) in a week; (4) did not pay a spread of hours premium when a tipped employee worked more than ten hours in a workday; (7) failed to reimburse tipped employees for the cost of uniforms, and (8) required tipped employees to launder their uniforms while not paying the required premium.

invalidation of the tip credit that Fresco took pursuant to Section 203(m) of the FLSA.

As Fresco's tip pool illegally included non-tip-eligible employees, Defendant's motion for summary judgment should be denied on the law.  However, even if the Court does not find that Plaintiffs' have proven that Defendant's tip pools are illegally, it is clear that Defendant's motion fails because there is a multitude of genuine issues of material facts.

## II.    STATEMENT OF FACTS[2]

Plaintiff Milena Cesarska worked at Fresco by Scotto as a waiter for over four years until she left the restaurant in November 2010.  (Pls' 56.1 ¶ 5)  Plaintiff Gary Gillian worked as a Fresco waiter from November 2009 until July 2010.  (Pls' 56.1 ¶ 5)  Opt-in plaintiff John Jeffrey Shaw worked as a Fresco waiter from January 2010 until April 2010.  (Pls' 56.1 ¶ 5)

Defendant compensates Plaintiffs and the other tipped employees at the minimum wage for New York food service workers (and take a tip-credit).  (Pls' 56.1 ¶ 46)  Tipped employees also receive a portion of the tips from a mandatory tip pool.  (Pls' 56.1 ¶ 44)

### A.    DEFENDANT REQUIRED TIPPED EMPLOYEES TO SHARE TIPS WITH MANAGERS ATTILIO VOSILLA AND BRENT DRILL.

Defendant requires tipped employees to share tips with managers Attilio Vosilla[3] and Brent Drill in the mandatory tip-pools.[4]  (Pls' 56.1 ¶ 52)  By paying management from money diverted from the tip pools, Defendant is essentially using customer tips to pay the managers' salaries.

---

[2] Plaintiffs also respectfully refer the Court to their annexed Counter Statement Pursuant to Local Civil Rule 56.1 in Opposition to Defendant's Partial Motion for Summary Judgment.  Plaintiffs' Counter Statement is hereafter cited as "Pls' 56.1 ¶ ____"

[3] Tipped employees are required to share a portion of the tips received from private parties with Mr. Vosilla when he worked as a party captain.  (Pls' 56.1 ¶ 26)  Customers pay a minimum of 20% gratuity for private parties.  (Pls' 56.1 ¶ 92)

[4] Mr. Vosilla is the night manager, and Mr. Drill is the day manager.  (*See* Pls' 56.1 ¶ 51)

Defendant's witnesses have testified that Attilio Vosilla is a manager, and Defendant admits in its company handbook that Brent Drill, Attilio Vosilla and owner Anthony Scotto, Jr., are the restaurants' managers.  (Pls' 56.1 ¶¶ 49-50)  These are not empty representations; the facts clearly show that Mr. Drill and Mr. Vosilla have managerial duties and authority.

1.    **Mr. Vosilla and Mr. Drill Have Authority to Interview, Hire and Fire Employees.**

Managers Vosilla and Drill have the authority to interview, hire and fire employees, and have acted upon this authority.  (Pls' 56.1 ¶¶ 7, 8)  Mr. Drill interviewed Plaintiff Cesarska, by himself, and at the end of the successful interview, Mr. Drill told Ms. Cesarska to come in for training.[5]  (Pls' 56.1 ¶ 8)  Mr. Drill hired Ms. Cesarska on the spot and did not speak with anyone or get anyone's approval prior to hiring her.  (*Id.*)  During her four years of employment, Ms. Cesarska witnessed Mr. Drill and Mr. Vosilla interview, hire and fire other tipped employees.  (Pls' 56.1 ¶¶ 7, 8)  Mr. Drill and Mr. Vosilla can interview employees without any other manager or owner being present.  (Pls' 56.1 ¶¶ 7, 8)    Further, Mr. Drill was the manager who informed Plaintiff Shaw that he was terminated.  (Pls' 56.1 ¶ 6)

2.    **Mr. Vosilla and Mr. Drill Supervise Employees and Control Their Employment Conditions.**

Mr. Drill and Mr. Vosilla supervise all tipped employees on the floor and control their employment conditions.  (Pls' 56.1 ¶¶ 7, 8, 53)  They monitor tipped employees performance to make sure the employees are not acting improperly, and when necessary, they correct the employees, including by disciplining them.  (*Id.*)

Indeed, throughout employees' entire employment, they are overseen and evaluated by managers Vosilla and Drill.  Managers Drill and Vosilla train new employees.  (Pls' 56.1 ¶ 55)

---

[5] Defendant admits that an individual who has been brought in for training is an employee.  (Pls' 56.1 ¶ 90)

Both managers hold pre-shift meetings in preparation for each shift and to address employee complaints and service and restaurant issues.  (Pls' 56.1 ¶ 57)  Mr. Vosilla posted the side work employees are required to perform, and Mr. Drill monitors employees to make sure they are doing their side work.  (Pls' 56.1 ¶¶ 58, 59)  Managers Drill and Vosilla have the authority to send employees home, including by punishing employees who are late.  (Pls' 56.1 ¶56)  The two managers make certain that employees perform their end-of-shift duties and review employees' cash outs.  (Pls' 56.1 ¶ 54)   Waiters are required to get approval from either Mr. Drill or Mr. Vosilla prior to closing down their section at the end of the shift and can not leave until their section are completely closed down.  (Pls' 56.1 ¶ 63)

Further, Defendant clearly recognizes Brent Drill's authority over the service staff as they testify that he is "in charge of the service for the entire restaurant."  (Pls' 56.1 ¶ 60)  Likewise, Mr. Vosilla regularly assumes complete control of the restaurant at night when owner Anthony Scotto is not present.  (Pls' 56.1 ¶ 60)

### 3.   Mr. Vosilla and Mr. Drill Handle Employee Scheduling at the Restaurant.

Both Mr. Vosilla and Mr. Drill have authority over employee scheduling.  Mr. Vosilla is generally responsible for creating the schedule at the restaurant; however, when Mr. Vosilla is on vacation, Mr. Drill handles scheduling. (Pls' 56.1 ¶¶ 27, 28) Further, Mr. Drill can make changes to the existing schedule, even when Mr. Vosilla is not on vacation. (Pls' 56.1 ¶28)

### 4.   Mr. Vosilla and Mr. Drill Are Involved in the Creation and Maintenance of Employment Records.

Mr. Vosilla and Mr. Drill take part in the creation and maintenance of records concerning Plaintiffs' employment.   Defendant's Rule 30(b)(6) witness testified that Mr. Vosilla was intimately involved in the creation and modification of the employment handbook.  (Pls' 56.1 ¶67) Mr. Vosilla is personally responsible for making sure that employees sign the company

handbook, and he signs the handbook on behalf of the company.  (*Id.*)  Mr. Vosilla also signs and certifies (under oath) Form I-9s for employees as the "Employer or Authorized Representative." (Pls' 56.1 ¶ 68)  Both Mr. Vosilla and Mr. Drill handle and review employees' cash out records. (Pls' 56.1 ¶ 64) Unlike tipped employees, Mr. Vosilla and Mr. Drill have access and use the office computers which contain company and employment records. (Pls' 56.1 ¶ 65)

**5.      Mr. Vosilla's and Mr. Drill's Compensation**

Additionally, the compensation received by Mr. Vosilla and Mr. Drill show that they are managers.  Unlike the tipped employees (or any other floor staff), Mr. Vosilla and Mr. Drill are paid a fixed weekly salary, in addition to their cuts of the tip-pools. (Pls' 56.1 ¶ 70)  When acting as a floor manager, Mr. Drill receives 50% more of the tip pool than waiters.  (Pls' 56.1 ¶ 26)

**6.      Mr. Vosilla's and Mr. Drill's General Duties and Appearance Further Evidence That They Are Managers**

The general duties and appearance of Mr. Vosilla and Mr. Drill provide further support of their managerial positions.  Both Mr. Vosilla and Mr. Drill always wear a suit, rather than the uniform worn by the tipped employees.   (Pls' 56.1 ¶ 71)   They handle customer complaints/issues and could void items, such as food that was improperly ordered by a waiter, on customer's checks.  (Pls' 56.1 ¶ 72)   Mr. Drill is authorized to decide who could sit in the VIP section.  (Pls' 56.1 ¶ 73)  At the end of the day, Mr. Vosilla shuts down the computers and locks up the restaurant.  (Pls' 56.1 ¶ 74)

Further, Mr. Drill does not eat when the tipped employees do, rather he eats at the shifts' end when the managers eat.  (Pls' 56.1 ¶ 76)  Mr. Drill represented to the outside world that he was a manager on his "Linked-in" professional networking page.  (Pls' 56.1 ¶ 69)  Finally, as managers, neither Mr. Vosilla nor Mr. Drill are included on the employee telephone list, which lists non-managerial waiters/captains, bartenders, and hosts.  (Pls' 56.1 ¶ 75)

**B.      DEFENDANT REQUIRED TIPPED EMPLOYEES TO SHARE TIPS WITH
NON-SERVICE EMPLOYEES.**

**1.      Stockers**

Defendant assigns one or more bussers to be a stocker for the whole shift, and requires

the tipped employees to share their tips with stockers.  (Pls' 56.1 ¶¶ 78, 80)  The stockers' job is

to restock glasses, silverware, and plates.  (Pls' 56.1 ¶ 81)  Stockers spend the majority of their

shift in the kitchen, where they get the glasses, silverware and plates from the dishwasher, wipe

down/dry these items, and then stack them.  (Pls' 56.1 ¶ 82)  Stockers only go on the floor to

restock the stocking stations.  (Pls' 56.1 ¶ 83)  Stockers do *not* clear dishes from customers'

tables, bring dirty dishes from the floor to the kitchen, or run food to customers. (Pls' 56.1 ¶¶ 18-

19)  Defendants specifically choose certain bussers who they do not want to be interacting with

customers to be stockers.  (Pls' 56.1 ¶ 84)  The stockers do not interact with customers or

perform direct customer service.  (Pls' 56.1 ¶ 85)

**2.      Expediters**

Defendant will also assign a runner to work a whole shift as an expediter, and tipped

employees are required to share their tips with the expediter.  (Pls' 56.1 ¶¶ 79-80)  The expediter

works in the kitchen, and his primary duties are to stand next to one of the chefs, provide

assistance to the chef, and act as an intermediary between the kitchen and the runners.  (Pls' 56.1

¶¶ 14, 87)  In performing these duties, the expediter does not interact with customers or perform

direct customer service.  (Pls' 56.1 ¶ 87)  While there may have been rare occasions when an

expediter ran food to a table, such an event was an anomaly.  (Pls' 56.1 ¶ 88)  An expediter

performs no – or virtually no – direct customer service during his shift.  (Pls' 56.1 ¶ 89)

### III.    ARGUMENT

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The district court is not permitted to resolve issues of fact, but must determine (a) whether there is a genuine issue as to any material fact, and (b) whether, in light of the undisputed facts, the movant is entitled to judgment as a matter of law."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (internal quotation omitted)   "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83  (2d Cir. 2004) (citations omitted)   "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1224 (2d Cir. 1994)

**A.    DEFENDANT VIOLATED THE FLSA BY AVAILING ITSELF OF THE TIP CREDIT WHILE REQUIRING TIPPED EMPLOYEES TO SHARE TIPS WITH MANAGERS AND NON-SERVICE EMPLOYEES.**

In general, the FLSA requires employers to pay employees a minimum wage, currently $7.25 per hour.  29 U.S.C. § 206.  However, "Section 3(m) of the FLSA, 29 U.S.C. § 203(m), allows an employer to pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage."  *Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002).  In order to avail themselves of the tip credit, an employer

must satisfy the prerequisites set forth in the FLSA  *Id.  See also Alejo v. Darna Rest.,* No. 09 Civ. 5436, 2010 U.S. Dist. LEXIS 133613 (S.D.N.Y. Dec. 17, 2010) ("Under the FLSA, an employer may use a tip credit against the federal minimum wage, but may not do so if there is a tip pool that is not compliant with the FLSA.")  Courts strictly construe the prerequisites to determine whether a tip credit may be taken.  *Chung*, 246 F. Supp. 2d at 229.  "The employer bears the burden of proving the validity of a tip pool, and the relevant FLSA provisions are strictly construed in favor of the employee."  *Roussell v. Brinker Int'l, Inc*., No. H-05-3733, 2008 U.S. Dist. LEXIS 52568, *25 (S.D.Tex. July 9, 2008)[6]

"The FLSA provides that if an employer takes advantage of the tip credit, 'all tips' received by an employee must be retained by that employee, or, if shared by means of a tip pool, the tips must only be shared 'among employees who customarily and regularly receive tips.'" *Heng Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780, at *47 (S.D.N.Y. Mar. 31, 2006) (quoting 29 U.S.C. § 203(m) ("Chan I"). "In other words, employers are not merely barred from taking the tip credit if *they* share in the tip pool, but they are barred from taking the tip credit if *any person* who does not 'customarily and regularly receive tips' shares in the tip pool." *Id.* (emphasis in original)[7]  Where an employer fails to properly distribute tips their employees, the tip-credit is lost, and the employer must reimburse the employees for the tip-credit illegally taken.  *Chung*, 246 F. Supp. 2d at 230-231.

---

[6] *See also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999) (recognizing that an employer has the "burden of proving its qualification" to take the tip credit); *Ash v. Sambodromo*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) ("Unless the employer satisfies its burden of showing the applicability of the tip credit, the employee is entitled to the full minimum wage for each hour worked.") (internal quotation omitted).

[7] There is additionally a requirement that the employer must have informed the employee of the employer's intent to take advantage of the tip credit.  *Chung*, 246 F. Supp. 2d at 229.  This prerequisite is not at issue in this case.

1.    **Restaurant Managers May Not Participate in The Tip Pool Under the FLSA's Requirement That Employers May Not Retain Tips.**

"[T]he practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping." *Chung*, 246 F. Supp. 2d 220, 229.

> [T]he practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping. This type of tip sharing is deemed to violate the statutory condition that "all tips" received by the employees be "retained" by the "employees." 29 U.S.C. § 203(m) The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the "employers" themselves.

*Wajcman v. Inv. Corp. of Palm Beach*, 2008 U.S. Dist. LEXIS 21939, *9 n.1. (S.D. Fla. Mar. 20, 2008), *citing*, *Chung*, 246 F. Supp. 2d 220 and *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305 (S.D.N.Y. 1998).

Under the FLSA an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In assessing whether an individual qualifies as an "employer" under the FLSA, Courts consider "'whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case.'" *Chan I*, 2006 U.S. Dist. LEXIS 15780, at *52 (*quoting, Herman v. RSR Sec. Servs*. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)); *Chung*, 246 F. Supp. 2d 220, 227 (same); *Garcia v. La Revise Assocs. LLC*, 2011 U.S. Dist. LEXIS 3325, at *17 (S.D.N.Y. Jan. 13, 2011) ("The test examines the totality of the circumstances to determine whether the alleged employer possessed the power to supervise and control the workers in question.")

In determining whether an individual qualifies as an "employer" under the FLSA, courts consider whether the individual "(1) had the power to hire and fire the employees, (2) supervised

and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Chan I*, 2006 U.S. Dist. LEXIS 15780, at *52 (internal citation omitted); *Garcia*, 2011 U.S. Dist. LEXIS 3325, at *17 (same). It is not necessary that every factor weigh in an employee's favor to find an individual to be an 'employer' under the law. *Jiao v. Chen*, No. 03Civ.0165(DF), 2007 U.S. Dist. LEXIS 96480, at *32 (S.D.N.Y. Mar. 30, 2007) Further, these four factors are not exclusive. A court "is free to consider any . . . factors it deems relevant to its assessment of the economic realities." *Id.* (*citing*, *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003); *See also Chan I*, 2006 U.S. Dist. LEXIS 15780, at *53 (A court "is free to consider any . . . factors it deems relevant").

"Moreover, the control exercised by an individual over employees need not be absolute and continuous to warrant a finding that the individual should be held liable for violating the statute as an employer." *Chung*, 246 F. Supp. 2d at 227. "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do[] not diminish the significance of its existence." *Id.* (citation omitted)

Applying this standard, the *Chan* court ruled in a later decision that an individual was an employer based upon his authority to hire and fire tipped employees and that he handled shift assignments. *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. 7770, at *36-37 (S.D.N.Y. Feb. 1, 2007) ("Chan II") In *Ayres*, the court found that an individual in question was tip-ineligible as a manager under the FLSA and New York Labor Law based upon the fact that the individual had: (1) authority to terminate and suspend; (2) authority to supervise wait staff and make hiring decisions; (3) responsibility for the restaurant's budget, including payroll and

food; and (4) received a fixed salary.  *Ayres*, 12 F. Supp. 2d at 308.[8]  *See also, e.g. Dole v. L & J, Inc.*, No. LR-C-89-339, 1990 WL 250980, at *1-2 (E.D. Ark. Mar. 7, 1990) (finding a bookkeeper who "customarily and regularly directed the activities of waiters" and a manager who could hire or fire to both be 'employers' under the FLSA)

### a.   Defendant Required Tipped Employees to Share Tips With Managers in Violation of the FLSA

Defendant required Plaintiffs and other tipped employees to share tips with managers Attilio Vosilla and Brent Drill in the mandatory tip-pools.

As set forth in Plaintiffs' statement of facts, Mr. Vosilla and Mr. Drill have the authority to hire, fire, and interview tipped employees.  They supervise tipped employees and control their conditions of employments.   Mr. Vosilla and Mr. Drill handle employee scheduling and are involved in the creation and maintenance of employment records.   Finally, both managers receive salaries and perform the general duties of managers.   Accordingly, Mr. Vosilla and Mr. Drill are clearly employers under the FLSA.

Nevertheless, based upon self-serving declarations and representations, Defendant argues that Mr. Vosilla and Mr. Drill should not be considered "employers" under the FLSA.[9] Defendant is wrong; managers Vosilla and Drill are employers under the FLSA, and it was

---

[8] *Cf. Ayres*, 12 F. Supp. 2d at 308 n.1 (citing the standard applied in, *NLRB v. Big Three Indus. Gas & Equip. Co*., 579 F.2d 304, 309-10 (5th Cir. 1978): "supervisors who had authority to 'interview job applicants, grant time off, allocate overtime work, transfer employees and recommend wage increases' were employer's agents")

[9]   Defendant attempts to confuse the issue by arguing that certain positions ("party captains" and "floor captains") are not FLSA employers.  (*See* Def's Mot. at 8)  However, the question is not whether a job position is an employer, but whether specific individuals are managers and qualify as employers.  *See Pedigo v. Austin Rumba, Inc*., 722 F. Supp. 2d 714, 740 (W.D.Tex. 2010) (ruling that in considering whether an employee is tip-eligible, a court must examine an employee's duties, rather than make a determination based upon employee's job title)  Further, as evident from Defendant's handbook, Mr. Vosilla and Mr. Drill were managers who also performed work as party and floor captains.  (*See also* Pls' 56.1 ¶ 50)

illegal for them to participate in the Fresco's tip pool.

Based upon a case that was issued less than three months ago, Defendant argues that "[i]t is well established that a banquet coordinator, which is the functional equivalent of a party captain, is not an 'employer' under the FLSA"  Mot. at 8 (citing *Garcia*, 2011 U.S. Dist. LEXIS 3325, at *14).  However, the court in *Garcia* never addressed whether a banquet coordinator was an employer under the FLSA.  Rather, the court found that the specific banquet coordinator at defendant's restaurant was a service employee who 'customarily and regularly received tips.'  *Id.* at *20.[10]

Nevertheless, Defendant is correct that the court in *Garcia* ruled that captains at Brasserie Ruhlmann ("Brasserie") did not qualify as "employers" under the FLSA.  (Mot. at 9; *Garcia*, 2011 U.S. Dist. LEXIS 3325, at *21-23.)  In so finding, the court found that the captains at issue did not "possess[] the power to supervise and control the workers in question."  *Id.* at *17.  The Brasserie captains did not have the authority to hire or fire, did not schedule shifts, and did not evaluate employees.  *Id.* at *21-22.[11]  Indeed, the court found that the captains at Brasserie had only one relevant, semi-managerial duty: they could decide to send an employee home early due to staffing needs and as a result, the individual would receive less tips. *Id.* at *21-22. Understandably, the court found that this was insufficient to meet the 'economic reality' test.

Defendant also relies on the case *Morgan v. Speak Easy, LLC*, 625 F. Supp. 2d 632 (N.D. Ill. 2007), which considered the tip sharing by senior servers who did not have authority over hiring, firing, or scheduling, and did not maintain employment records.  The court recognized

---

[10] Plaintiffs will further discuss the FLSA's prohibition against the sharing of tips with non-service employees in Section III(A)(2) below.

[11] The plaintiffs in *Garcia* also argued that captains "were involved in the process of hiring employees"; however, the court found that plaintiffs did not have personal knowledge to support this assertion.  *Id.* at *21-22.

that "[w]here management employees participate in a tip pool, the pool is invalid." *Id.* at 652. Due to the senior servers lack of authority and 'the totality of the circumstances', the court concluded that the senior servers were not managers or 'employers' under the FLSA.

Unlike in *Garcia* and *Morgan*, here Plaintiffs have produced evidence that Messrs. Drill and Vosilla hire and fire employees. Plaintiff Cesarska, a long-time employee of Defendant, has testified under oath in her deposition and in declarations as to her personal knowledge that Mr. Drill and Mr. Vosilla hired and fired employees. Indeed, Mr. Drill was the only person who interviewed Plaintiff Cesarska. Without having to consult with anyone else, Mr. Drill found Plaintiff Cesarska acceptable and instructed her when to come in for her first day of training. Defendant admits that an individual who is training to work at Fresco is an employee. Accordingly, Mr. Drill hired Plaintiff Cesarska.[12] Further, over her four years of employment, Ms. Cesarska observed Mr. Drill and Mr. Vosilla hire and terminate other employees.

Mr. Vosilla and Mr. Drill possess additional authority not held by the individuals at issue in *Garcia* and *Morgan*. Significantly, both Mr. Vosilla and Mr. Drill handle employee scheduling and evaluate employees' performance. *See supra*, pp. 3-4. Taken together with the managers' maintenance of employment records, salaried compensation, and other managerial duties, it is clear that Mr. Vosilla and Mr. Drill qualify as "employers" under the FLSA.

---

[12] It is anticipated that Defendant will argue that Ms. Cesarska's continuing employment following training was contingent upon the approval of Anthony Scotto. Regardless of whether Anthony Scotto does make such a decision regarding each and every employee, the simple fact remains that Ms. Cesarska was an employee while training, and it was Mr. Drill's decision to have Ms. Cesarska come in for training. Essentially Defendant's argument is that as Mr. Scotto could later terminate Ms. Cesarska, she had not been previously hired. This argument is absurd. Indeed, as an at-will employee, Plaintiff Cesarska could have been terminated at any point if Defendant decided that she was not acceptable; nevertheless, this does not change the fact that she was hired.

2.      **Non-Managerial Employees Who Do Not Perform Service During Their Shift May Not Take Part in the Tip-Pool.**

Employers "are barred from taking the tip credit if *any person* who does not 'customarily and regularly receive tips' shares in the tip-pool" *Chan I*, 2006 U.S. Dist. LEXIS 15780 at \*47. "The phrase 'customarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57. A non-managerial employee must "perform[] important customer service functions" to be considered an employee who "customarily and regularly" receives tips. *Wajcman*, 2008 U.S. Dist. LEXIS 21939, at \*7-8. *See Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-M, 2009 U.S. Dist. LEXIS 56957, at \*2 (N.D. Tex. Feb. 9, 2009) ("Defendant violated 29 U.S.C. § 203(m) by requiring Plaintiffs to share their tips with employees engaged in occupations that do not customarily and regularly receive tips, such as kitchen helpers") "Courts have focused on the amount of customer interaction in determining who is a tipped employee [who customarily and regularly receives tips.]" *Ash*, 676 F. Supp. 2d at 1371 (summarizing cases); *See also Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F. 3d 294 (6th Cir. 1998) (finding that hosts 'customarily and regularly receive tips' based upon their "important customer service functions", including "greet[ing] customers, supply[ing] them with menus, seat[ing] them at tables, and occasionally 'enhanc[ing] the wait'" which amounted to significantly "more than *de minimis* interaction with the customers.")[13]

"[A] determination of an employee's eligibility to participate in a tip pool requires an *ad hoc* analysis of an employee's duties, rather than a *per se* determination based upon an employee's job title." *Pedigo*, 722 F. Supp. 2d at 740.

---

[13] While Defendant seeks to limit the inquiry of whether an employee "customarily and regularly receives tips" to whether an employee has more than a *de minimis* interaction with customer, courts have not restricted their inquiry to this assessment. *Ash*, 676 F. Supp. 2d at 1371.

### a.   Defendant Required Tipped Employees to Share Tips With Non-Service Employees

Defendant requires Plaintiffs and other tipped employees to share tips with employees who perform no – or *de minimis* – service during their shift, including stockers and expediters.[14]

### 1)   Stockers

Stockers spend the vast majority of their shifts in the kitchen, wiping/drying and stacking tableware.  The remainder of their shift is spent taking the tableware to the stocking stations. The stockers do not interact with any customers during their shift, and do not perform any direct customer service.  Indeed, Defendant admits that they specifically assign individuals whom they do not want to interact with customers to be stockers.  *See Young*, 2009 U.S. Dist. LEXIS 56957, at *2 (ruling that "kitchen helpers" were non-service employees and could not share in tip-pool); *Elkins v. Showcase, Inc.*, 237 Kan. 720, 735 (Kan. 1985) (An employee who performs his duties "away from the customers" is a nonservice employee who does not 'customarily and regularly receive tips' under the FLSA.)

In assessing whether stockers are tipped employees, it is helpful to consider a 1997

---

[14] Aside from being a manager, Mr. Vosilla is not entitled to receive tips when he acts as a party captain because of the lack of direct customer service.  The party captain's duties are to introduce himself to the host, "plate" pasta (*i.e.* put pasta onto plates) outside of the customers' view, and direct waiters where to take the plates of food.  (Pls' 56.1 ¶ 25)  As the party captain, Mr. Vosilla does not run or serve food at parties, and only on very rare occasions takes food or drink orders or pours wine.  *Id.*  Further, Mr. Vosilla is often not even present during much of the party.  *Id.  Cf. Duchene v. Michael L. Cetta, Inc.*, No. 06Civ.4576(PAC)(GWG) 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving settlement of class/collective action brought under the FLSA and New York Labor Law based upon the distribution of tips to individuals "who were not 'tipped employees' (*e.g.* the Banquet Manager, . . . ."); *Owens v. University Club of Memphis,* No. 02A01-9705-CV-00103, 1998 Tenn. App. LEXIS 688, at *33-34 (Ct. App. Tenn. Oct. 15, 1998) (after reviewing FLSA 'customarily and regularly receive tips' standard, court found that 'banquet supervisors' were not eligible to receive tips as "customers who served" under the state law)

opinion letter by the U.S. Department of Labor.[15]   U.S.D.O.L. Op. Ltr., 1997 DOLWH LEXIS

55 (Nov. 4, 1997).   In its opinion letter, the DOL considered the distribution of tips to a

dishwasher whose duties included "set[ting] up glasses in the customer area during normal

service periods", "respond[ing] to direct customer requests when servicing service stations

located on the floor of the restaurant", and "bring[ing] things to customers at the direction of

waiters/waitresses in cases where busboys/busgirls are not available."   *Id*. at 2-3.   Accordingly,

like the Fresco stockers, the dishwashers in the letter had to stock items at service stations on the

floor; however, unlike the stockers at Fresco, the dishwashers actually performed some amount

of service by responding to customer requests and bringing items to customers.   Despite the

(limited) service performed by the dishwasher, the Department of Labor found that the

dishwasher did not 'customarily and regularly receive tips', and the employer could not require

employees to share tips with the dishwasher.   *Id.* at *4

### 2)   Expediters

Fresco expediters work their shift in the kitchen.   Expediters stand next to the chefs to

provide assistance and act as an intermediary between the kitchen and the runners.   As a kitchen

employee, the expediter does not interact with customers or perform direct customer service.   On

rare occasions, an expediter might have to assist the runners and take food to a table; however,

such events are atypical.   Accordingly, during their shift the expediters perform no more than, at

most, *de minimis* service work.   *See Pedigo*, 722 F. Supp. 2d at 732 (granting plaintiff summary

judgment where tip pool included dishwashers, despite the fact that the dishwashers would "(1)

bus tables 'as needed,' (2) have 'run food to tables' in the past; and/or (3) perform barback duties

---

[15] "Interpretive and opinion letters by the Department of Labor do not per se bind the court. Such materials, however, do constitute a body of experienced and informed judgment and the court will give these materials substantial weight."   *Samson v. Apollo Resources, Inc*., 242 F.3d 629, 638 (5th Cir. 2001) (internal quotation omitted)

'sometimes.'"); *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101 (E.D. Tenn. 1979)
"[K]itchen personnel are not employees 'who customarily and regularly receive tips.'");
*Marshall v. Krystal Co.*, 467 F. Supp. 9, 12-14 (E.D.Tenn. 1978) (employer not permitted to
share tips with "preparation and kitchen-maintenance personnel")

### 3)      Stockers and Expediters' Dual Jobs

The fact that a stocker or expediter might work another shift as a busser and runner is
irrelevant to the determination of whether the individual is a tip-eligible employee while
stocking/expediting.  Individuals who are stocking (or expediting) for some shifts and bussing
(or running) for other shifts are engaging in two occupations, one of which produces tips and one
of which does not.  Accordingly, as stockers (or expediters), they are not tipped employees and
cannot take part in the tip pool for the shift in which they are a stocking/expediting. *See* 29
C.F.R. 531.56(e) (explaining that where an individual is employed in a dual job, one of which is
a tipped occupation, such as a waiting tables, and the other which is not, such as maintenance
work, the individual is not a tipped employee for his hours of employment performing the non-
tipped work)

Where an employee perform both non-service and service work, he is only considered a
"tipped employee" for the time worked performing a job in which tips are customarily received.
*See, e.g. Myers*, 192 F.3d at 550-551 (waiter who was occasionally assigned to work as a salad
preparer for the shift was not a "tipped employee" when performing work as a salad preparer,
and the individual's inclusion in the tip pool invalidated the pool); *Roussell*, 2008 U.S. Dist.
LEXIS 52568, at *55-58 (recognizing that a waiter who worked a shift as a non-tipped employee
could not participate in a tip pool for that shift); U.S.D.O.L. Op. Ltr., 1985 DOLWH LEXIS 9
(Dec. 20, 1985) at *3-4 (Dec. 20, 1985) (same); *Fast v. Applebee's Int'l, Inc*., No. 06-4146, 2010

U.S. Dist. LEXIS 19571, at *3 (W.D.Mo. Mar. 4, 2010) ("If an employee is engaged in both a tipped occupation and a non-tipped occupation, then the tip credit can only be taken for the time worked in the tipped occupation."); *Hodgson v. Frisch's Dixie, Inc.,* 1971 U.S. Dist. LEXIS 12029, at *7, 10 (W.D. Ky. Aug. 16, 1971) (ruling that a waiter is not a tipped employee during a shift when she performs non-tipped work); *Dole v. Bishop*, 740 F. Supp. 1221, 1228 (S.D.Miss. 1990) (waiter was a non-tipped employee when cleaning bathrooms and preparing food).

Despite the evidence that stockers and expediters are non-service employees, Defendant argues that they "customarily and regularly" receive tips.  In support, Defendant cites to self-serving declarations and testimony by their owner and managers who allege that the individuals perform service.  Plaintiffs strongly contest Defendant's portrayals of runners and expediters' jobs; and will prove that the employees perform no – or *de minimis* – service work during their shift.

However, even if Defendant were correct that stockers performed service 25 to 50% of the time, and non-service work 75 to 50% of the time, stockers would be ineligible to take part in the tip pool for the portion of the time in which they are performing non-service work.  *See Fast*, 2010 U.S. Dist. LEXIS 19571, at *5-10 (adopting Department of Labor's interpretation[16] that where a service employee, such as a waiter, performs greater than 20 percent of their time on non-service work related to the tipped occupation, such as maintenance, preparatory or closing activities, the employee is not a tipped employee while performing the non-service work); *Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, at *13 (S.D.Tex. Apr. 21, 2010) (explaining that "if a party does non-tipped work for greater than 20% of their work-day, they cannot be treated as a tipped employee *for that portion of their work*.") (emphasis in

---

[16] *See* Palmer Decl., Ex. M (excerpt from Dept of Lab, Wage and Hour Field Operations Handbook), ¶30d00(e).

original); *Ash*, 676 F. Supp. 2d at 1366-1367 (applying the 20% test); *See also* Palmer Decl., Ex.

N (Brief for the Sec. of Lab. as *Amicus Curiae*, *Fast v. Applebee's Int'l, Inc.*, Nos. 10-1725/26

(8th Cir.))[17]

## B.   DEFENDANT'S MANDATORY TIP-POOL IS ILLEGAL UNDER NEW YORK LABOR LAW BECAUSE IT INCLUDES MANAGERS. [18]

Section 196-d disallows any "employer or his agent or an officer or agent of any

corporation" from participating in a tip-pool.  Should such an individual take part in the tip pool,

it is a violation of the state law, regardless of whether they perform service duties.  *Heng Chan v.*

*Triple 8 Palace, Inc.*, No. 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780 at *59 (S.D.N.Y. Mar. 30,

2006) ("Chan I")   *See also Hartnett v. Wade-Mark Eleven, Inc.*, 549 N.Y.S.2d 69, 70

(recognizing that restaurant management is not permitted to receive a portion of the tip pool

under §196-d)

"The test for determining whether an individual qualifies as an 'employer' is the same

under the FLSA and New York Labor Law."  *Chan I*, 2006 U.S. Dist. LEXIS 15780 at *52.  *See*

*supra* pp. 9-11.  Accordingly, an individual who is found to be an "employer" under the FLSA

will also be an employer under the § 196-d.  *See, e.g. Chan II*, 2007 U.S. Dist. 7770, at *34-36

(S.D.N.Y. Feb. 1, 2007) ("Chan II"); *Chung*, 246 F. Supp. 2d 220, 227-230.

---

[17] "The Secretary's interpretations of her regulations are . . . entitled to 'controlling' deference unless those interpretations are 'plainly erroneous or inconsistent with the regulation.'"  *In re Novartis Wage & Hour Litig.*, 611 F.3d 141  (2d Cir. 2010), *quoting, Auer v. Robbins*, 519 U.S. 452, 461 (1997)

[18] In addition to N.Y. Lab. Law 196-d; Defendant violated Section 193 and Section 198-b by requiring tipped employees to share their tips with managers and non-service employees.  *See Fowler v Scores Holding Co.*, 677 F Supp 2d 673, 684 (S.D.N.Y. 2009) (recognizing claim under § 193 where plaintiff alleged that she had to share her tips with supervisors and/or managers and non-service employees); *Chung v. New Silver Palace Restaurant*. 272 F. Supp. 2d 314, 316 (S.D.N.Y. 2003) (recognizing claim under § 198-b where waiters and bussers were required to share their tips with management) .

New York Labor Law defines a corporation's "agent" as including "a manager, superintendent, foreman, supervisor or any other person employed acting in such capacity." N.Y. Labor Law § 2(8-a).  This definition applies to the entire Labor Law, including Section 196-d.  *Cf. Adler v 20/20 Cos.*, No. 2009-09718, 2011 NY Slip Op 1961, at *4 (2d Dep't Mar. 15, 2011) (approving lower court's application of the definition of "agent" under N.Y. Labor Law § 2(8-a) to the determination of whether a company qualified as an agent under N.Y. Labor Law § 215).[19]  Further, as clear from the legislative history of § 196-d, the legislature wanted to cure situations where supervisors demanded a portion of service employees' tips.  *See* Palmer Decl., Ex. O (Mem. of Indus. Comm'r, June 6, 1968, Bill Jacket, L 1968, ch. 1007, p.4 ("Arguments in support of bill: . . . In night clubs and large restaurants, headwaiters frequently demand a portion of the tips of their subordinates."))

The New York Department of Labor has instructed that even a host or bartender could be considered "an agent of the employer within the meaning of the statute" if he acted sufficiently like a supervisor.  *See* Palmer Decl., Ex. P ((N.Y.D.O.L. Op. Ltr. (Sept. 23, 1997) at 2)[20]  The NYDOL provided the following examples of an employee acting like "an agent of the employer": "exercising the authority to hire and fire and/or determin[ing] the schedules and/or compensation of the employees participating in the tip pool."  *Id.* (emphasis added)  Similarly, the court in *In re Starbucks Emple. Gratuity Litig.*, found that an individual who had the "capacity to hire, fire *or* discipline other employees" could be found to be an agent under

---

[19] When apply state law, a federal court is "generally obliged to follow the state law decisions of state intermediate appellate courts."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005)

[20]  "The [New York] Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference.  The construction given statutes and regulations by the agency responsible for their administration, "if not irrational or unreasonable," should be upheld"  *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008) (favorably citing N.Y.D.O.L. opinion letter)

§196-d.  264 F.R.D. 67, 72 (S.D.N.Y. 2009) (emphasis added)

**1.    Defendant Required Tipped Employees to Share Tips With Managers in Violation of the § 196-d.**

Defendant required Plaintiffs and the other tipped employees to share tips with managers Attilio Vosilla and Brent Drill in the mandatory tip-pools.  By paying management from money diverted from the tip pools, Defendant is essentially using customer tips to pay/supplement the managers' salaries.  *Cf. Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 710 (S.D.N.Y. 2007) (ruling that it was a "textbook violation of 196-d" to use a tip pool to pay for a portion of the salaries of other employees)

As previously set forth, Mr. Vosilla and Mr. Drill have the authority to hire, fire, and interview tipped employees.  They supervise tipped employees and control their conditions of employments.   Mr. Vosilla and Mr. Drill handle employee scheduling and are involved in the creation and maintenance of employment records.  Finally, both managers receive salaried compensation and perform the general duties of managers.  Accordingly, Mr. Vosilla and Mr. Drill are clearly employers and/or agents of the employer/corporation under §196-d.

Citing the *In re Starbucks Emple. Gratuity Litig.* and *Garcia* cases, Defendant argues that Mr. Vosilla and Mr. Drill are neither employers nor agents of the employer/corporation under §196-d.   However, the individuals at issue in both the *Starbucks* and *Garcia* cases had significantly less managerial authority than managers Vosilla and Drill.   Indeed, unlike the *Garcia* captains and the *Starbucks*[21] shift supervisors, Mr. Vosilla and Mr. Drill have authority to hire, fire, and evaluate employees and schedule shifts.  *See supra* pp. 3-4.  The evidence shows

---

[21] *In re Starbucks Emple. Gratuity Litig.*, 264 F.R.D. at 70 ("Shift Supervisors do not have the authority to interview, hire, transfer, evaluate, promote, issue formal discipline, fire, or determine pay for any partners.  Shift Supervisors also do not prepare the work schedule, approve overtime work, or process payroll.")

that managers Vosilla and Drill were employers and/or agents of the employer/corporation.

**C.** **DEFENDANT'S MANDATORY TIP-POOL IS ILLEGAL UNDER THE NEW YORK LABOR LAW BECAUSE IT INCLUDES NON-SERVICE EMPLOYEES [22]**

N.Y. Lab. Law § 196-d also prohibits an employer from requiring an employee to share their tips with any person other than other waiters, busboys or similar employees.  N.Y. Lab. Law § 196-d (prohibiting an "employer or his agent or an officer or agent of any corporation, *or any other person*" from accepting an employee's tips with an exception for the "sharing of tips by a waiter with a busboy or similar employee.")  *See also Chan I*, 2006 U.S. Dist. LEXIS 15780, at *57 (recognizing that a tip-pool may not include individuals who, "were not waiters, busboys, or 'similar employees' . . . ."); *Chan II*, 2007 U.S. Dist. 7770, at * 55 ("The term 'similar employee' refers to employees similar to waiters, including hosts or greeters.")  Accordingly, §196-d bars a restaurant from distributing gratuity to employees whose job does not involve a "meaningful aspect of direct service" to customers.  Palmer Decl., Ex. Q, (*Tandoor Restaurant, Inc. v. Commissioner of Labor*, Docket No. PR-82-85, at *3 (Dec. 23, 1987); (finding that kitchen workers provided no customer service and could not lawfully be part of the tip pool)); N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.14 (2011) ("Eligibility of employees to receive shared tips, or to receive distributions from a tip pool, shall be based upon duties and not titles. Eligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental.")

**1.** **Defendant Required Tipped Employees to Share Tips With Non-Service Employees.**

As previously discussed, Defendant requires tipped employees to share tips with employees who perform no meaningful direct service to customers, including stockers and

---

[22] *See supra*, fn. 18.

expediters.[23]   Stockers and expediters spend the vast majority of their shift in the kitchen. During their shifts as stockers and expediters, the employees do not interact with customers or perform "personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental."  N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.14 (2011).

Furthermore, New York regulations have codified a dual job test that is even more strict than under the FLSA.  Under New York law, "[o]n any day that service employee or food service worker works at a non-tipped occupation for (a) for two hours or more, or (b) for more than twenty percent (20%) of his or shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day."  N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.9 (2011). Accordingly, even if expediters and stockers perform more than *de minimis* service during their shift – which they do not – they would still not be a tip eligible employee due to the amount of time they perform non-tipped work.

As stockers and expediters jobs did not involve any meaningful amount of direct service (and certainly did not involve direct service work for more than 80% of their shift), Plaintiffs and the other tipped employees are entitled to recover the amount to tips that was illegally distributed to the non-service employees.

**D.     THERE ARE GENUINE DISPUTES OF MATERIAL FACTS.**

"The question of whether [an individual] is an FLSA 'employer' is a 'mixed question of law and fact,' involving 'the application of a legal standard to a particular set of facts' . . . [and is

---

[23]  Additionally, Attilio Vosilla receives a portion of the tip pool as a party captain, yet he performs little or no service at these parties.   (*See supra* fn. 14.)  Accordingly, aside from being a manager, Mr. Vosilla was also not entitled to these tips as he did not act as a service employee for the customers who tipped.  *See* Palmer Decl, Ex. R, (N.Y.D.O.L. Op. Ltr. (Aug 27, 1999)) ("The employer may only compel such service employees [working a party] to share a portion of their gratuities with the busboy(s) or 'similar employee(s)' who assisted them in serving the customer(s) in question.")

thus] 'especially well-suited for jury determination.'" *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956, 2011 U.S. Dist. LEXIS 8591, at *17-18 (E.D.N.Y. Jan. 28, 2011) (*quoting*, *Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 185-186 (2d Cir. 2010) "It follow then that 'this determination is rarely suitable for summary judgment.'" *Franco*, 2011 U.S. Dist. LEXIS 8591, at *18 (quoting, *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 (S.D.N.Y. 2010);

Here, the parties present contradictory testimonial evidence on a number of issues, including whether Brent Drill and Attilio Vosilla hired and fired employees and their authority to control employee schedules and conditions of employment.  It will be necessary for the fact finder to assess the credibility of the Plaintiffs' and Defendant's witnesses.  Accordingly, a determination as to whether Mr. Drill and Mr. Vosilla are employers under the law is inappropriate at the summary judgment stage.  *See Kwee Ling Tan v. Mr. Pi's Sushi, Inc.*, No. 09-1579, 2010 U.S. Dist. LEXIS 134769, at *7-10, 15 (D.N.J. Dec. 21, 2010) (denying defendant's motion for summary judgment that the individual defendant was not an employer under the FLSA as plaintiff and defendant gave contradictory testimony concerning the individual defendant's authority to hire, fire, schedule and supervise employees, and determine compensation.)[24]

Similarly, while the undisputed facts show that stockers and expediters are not tip-eligible employees, requiring the denial of Defendant's motion for summary judgment, the motion should also be denied as there are genuine issues of material facts concerning stockers

---

[24] *See also Fredette v. BVP Management Assocs.*, No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954 (M.D. Fla. July 6, 1995) (denying defendant's motion for summary judgment that a maitre'd was plaintiff's employer under the law based upon plaintiff's allegations supporting "an inference that [the maitre'd] was also a manager" and finding a "genuine issue of material fact exists as to [the maitre'd's] duties"), *accepted (on this point), rejected in part by*, 905 F. Supp. 1034, 1038 (M.D. Fla. 1995), *reversed and remanded on other grounds*, 112 F.3d 1503 (11th Cir. Fla. 1997).

and expediters job duties.   *See Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y.

2007) (denying defendant's motion for summary judgment that pantry workers and dim sum

servers 'customarily and regularly receive tips' as "an issue of fact remains to be tried regarding

whether the pantry workers and dim sum servers, while 'not the primary customer contact . . .

have more than *de minimis* interaction with the customers' and are otherwise entitled to share in

the tip pool[.]"), *quoting*, *Kilgore*, 160 F.3d at 301.[25]

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment

should be denied.


Dated: New York, New York                        Respectfully submitted,
            April 1, 2011


                                                          _/s/ Michael D. Palmer_____
                                                          Michael D. Palmer (MP-5090)
                                                          JOSEPH, HERZFELD, HESTER &
                                                          KIRSCHENBAUM LLP
                                                          233 Broadway, 5th Floor
                                                          New York, NY 10279
                                                          (212) 688-5640
                                                          (212) 688-2548 (fax)

                                                          *Attorneys for Plaintiffs, proposed collective*
                                                          *action members and proposed class*

---

[25] *See also Roussell*, 2008 U.S. Dist. LEXIS 52568, at *44-45 (denying summary judgment due
to conflict testimony regarding the amount of time that the employees at issue interacted with
customers); *Cf. Holder v. MJDE Venture, LLC,* No. 1:08-CV-2218, 2009 U.S. Dist. LEXIS
111353, at *1-2, 10-11, (N.D.Ga. Dec. 1, 2009) (denying defendant's motion for summary
judgment that plaintiff was properly considered to be a tipped employee during her entire
employment based upon plaintiff's representations that she performed non-tipped worked)