UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GARY GILLIAN and MILENA CESARSKA          INDEX NO. 1:10-cv-06056-JSR
on behalf of themselves and others similarly
situated,

               **Plaintiffs,**

      **v.**

STARJEM RESTAURANT CORP. d/b/a/
FRESCO BY SCOTTO,

               **Defendant.**
---------------------------------------------------------x


<u>**PLAINTIFFS' COUNTER STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1 IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**</u>[1]

        Plaintiffs Gary Gillian and Milena Cesarska (collectively, "Plaintiffs"), by their undersigned attorneys, submit this Counter Statement Pursuant to Local Civil Rule 56.1 in Opposition to Defendant's Motion for Partial Summary Judgment.  Plaintiffs respond to the assertions in Defendant's Rule 56.1 Statement without conceding that each and every one of the assertions is a statement of material fact.

**<u>Plaintiffs' Responses to Defendant's Statement Pursuant to Local Civil Rule 56.1</u>**

      1.       Plaintiffs admit the assertions in Paragraph 1.

      2.       Plaintiffs admit the assertions in Paragraph 2.

---

[1]  Plaintiffs cite to the following, herein: (1) Declaration of Milena Cesarska, dated March 17, 2011 ("Cesarska Decl."); (2) Declaration of Gary Gillian, dated March 17, 2011 ("Gillian Decl."); (3) Declaration of John Jeffrey Shaw, dated March 16, 2011 ("Shaw Decl."); (4)Supplemental Declaration of Milena Cesarska, dated March 31, 2011 ("Cesarska Supp. Decl."); (5) Supplemental Declaration of Gary Gillian, dated March 31, 2011 ("Gillian Supp. Decl."); and (6) the Declaration of Michael D. Palmer, dated April 1, 2011 ("Palmer Decl.") and exhibits attached thereto.

3.      Plaintiffs admit the assertions in Paragraph 3 that Anthony Scotto is an owner of the Fresco by Scotto, that Mr. Scotto does not participate in the tip pool, and that he maintains some of Fresco's employment records.  Plaintiffs admit that Mr. Scotto is one individual who has authority concerning employment related decisions at the Restaurant; however, Plaintiffs deny that Mr. Scotto has sole authority over all employment related decisions at the Restaurant, including the decisions to interview, hire, fire, or discipline employees, and to set their terms and conditions of employment.   (*See infra* ¶¶ 7-9, 27-28, 53-63, 67)  Plaintiffs deny that Mr. Scotto is the General Manager of the restaurant.  (*See* Cesarska Dep. 77:10-11, 147:7-16, 166:1-2)

4.      Plaintiffs admit that Mr. Scotto interviewed and hired Plaintiff Gillian and Opt-in Shaw.  Plaintiffs deny that Mr. Scotto interviewed or hired Plaintiff Cesarska.  (*See infra* ¶¶ 8-9) Plaintiffs deny that Mr. Scotto was the sole individual who determined the individuals wage rates and all other terms and conditions of their employment.  (*See* Scotto Dep. 125:8-12, 141:20-142:7, 156:19-160:10)

5.      Plaintiffs deny that Gary Gillian was first employed by Defendant on December 1, 2010; Plaintiff Gillian started in late November 2010.  (Palmer Decl. ¶ 21; Gillian Decl. ¶ 2) Plaintiffs admit that Plaintiff Gillian worked as a waiter until approximately July 17, 2010. Plaintiffs admit that Milena Cesarska worked as a waiter for Defendant from approximately June 27, 2006 until November 22, 2010.  Plaintiffs admit that Opt-in Shaw worked as a waiter for Defendant from approximately January 19, 2010 until April 16, 2010.

6.      Plaintiffs admit that Mr. Scotto ended the employment of Plaintiff Gillian and that Mr. Gillian stated in his deposition that he did not know whether Mr. Vosilla or Mr. Drill participated in the decision to lay him off, and that he did not think that they were at the Restaurant when Mr. Gillian was laid off.   Plaintiffs deny that Mr. Scotto "ended the

employment" of Mr. Shaw, as Mr. Drill informed Mr. Shaw that he was terminated; however, Plaintiffs admit that Mr. Scotto may have made the decision to terminate Mr. Shaw.  (Shaw Decl. ¶ 27; Shaw Dep. 34:5-22, 35:16-23)

7.      Plaintiffs deny the assertions in Paragraph 7.

By way of further response, Plaintiffs state that Mr. Vosilla has the authority to hire, fire, and discipline employees, and he exercises control over the terms and conditions of employment of other employees.   Mr. Vosilla was observed hiring and firing other tipped employees. (Cesarska Decl. ¶ 39; Cesarska Supp. Decl. ¶ 8; Cesarska Dep. 31:7-10, 164:10-19)  Mr. Vosilla has the authority to send employees home, including to punish employees who were late. (Cesarska Decl. ¶ 36; Gillian Decl. ¶ 30)  Mr. Vosilla has interviewed potential employees by himself.  (Cesarska Supp. Decl. ¶ 8).   Mr. Vosilla also disciplines employees, as he himself admitted.  (Vosilla Dep. 55:16-20; Cesarska Dep. 18:20-20:4; Cesarska Decl. ¶ 36; *See also infra* ¶ 53)  Mr. Vosilla exercises control over the terms and conditions of employment of other employees.  (*See infra* ¶¶ 9, 27, 53-58, 61-63, 67)

8.      Plaintiffs deny the assertions in Paragraph 8.

By way of further response, Plaintiffs state Mr. Drill has the authority to hire, fire, and discipline employees, and he exercises control over the terms and conditions of employment of other employees.   Mr. Drill interviewed Plaintiff Cesarska by himself.  (Cesarska Decl. ¶ 27; Cesarska Supp. Decl. ¶ 6; Cesarska Dep. 25:2-10)  At the end of the successful interview, Mr. Drill told Ms. Cesarska to come in for training.  (Cesarska Decl. ¶ 27; Cesarska Supp. Decl. ¶ 6; Cesarska Dep. 25:2-10, 31:13-32:4)  Mr. Drill hired Ms. Cesarska on the spot and did not speak with anyone or get anyone's approval prior to hiring her.  (Cesarska Supp. Decl. ¶ 6)  Mr. Drill was also observed hiring and firing other tipped employees, and he has interviewed other

employees, by himself.  (Cesarska Decl. ¶¶ 27, 28; Cesarska Supp. Decl. ¶ 7; Cesarska Dep. 31:13-19, 157:8-15, 164:6-9)  Mr. Drill has also disciplined employees.  (Cesarska Dep. 18:20-20:4; Cesarska Decl. ¶ 29; *See also infra* ¶ 53)  Mr. Drill exercises control over the terms and conditions of employment of other employees.  (*See infra* ¶¶ 9, 28, 53-57, 59-60, 62-63)

9.    Plaintiffs deny the allegations in Paragraph 9, except admit that Mr. Vosilla and Mr. Drill sometimes interviewed employees with Mr. Scotto.

By way of further response, Plaintiffs state Mr. Drill interviewed Ms. Cesarska by himself.  (*See supra* ¶ 8)     Mr. Drill was also observed interviewing other prospective employees, by himself.    (*See supra* ¶ 8)     Mr. Vosilla was also observed interviewing prospective employees, by himself.  (*See supra* ¶ 8)

Also, on those occasions when they are present at interviews with Mr. Scotto, Mr. Vosilla and Mr. Drill provide Mr. Scotto with their opinion concerning potential employees.  (Vosilla Dep. 57:18-25; Drill Dep. 50:5-51:11)

10.    Plaintiffs deny that all of the individuals listed in Paragraph 10 are 'service employees'.  (*See supra* ¶¶ 7-9; *infra* ¶¶ 22, 25-29, 50-88)  Plaintiffs admit that multiple employees participate in the service of tables in the dining room.  Plaintiffs admit that the following positions take part in tip pools: waiters, runners, busboys, stockers, coffee persons, floor captains, and party captains; however, Plaintiffs deny that these are the only positions which take part in the tip pool.  In addition to the individuals referenced by Defendant, bartenders and expediters take part in the tip pool, although expediters are not service employees. (Cesarska Supp. Decl. ¶¶ 11, 13; Gillian Supp. Decl. ¶¶ 6, 8; *See, e.g. infra* ¶¶ 13-15, 86-88)

11.    Plaintiffs admit the assertions in Paragraph 11.

12.    Plaintiffs admit the assertion in Paragraph 12.

13.    Plaintiffs admit that a runner is designated to be an expediter for some shifts; however, to the extent that the statement of fact suggests that this happened infrequently, Plaintiffs deny that it was an abnormal occurrence.  (*See* Cesarska Dep. 137:1-7)  Plaintiffs also deny that the expediter is a "runner/expediter"; the individual is an expediter for the shift.  (Shaw Dep. 45:18-20; Cesarska Dep. 135:3-10; *See infra* ¶ 14-15, 86-88).  Plaintiffs admit that the expediter stands next to the sous chef or chef during a meal shift.  Plaintiffs deny that the sous chef/chef is the expediter for the shift when a runner is designated as an expediter.  (Cesarska Supp. Decl. ¶12; Gillian Supp. Decl. ¶ 7; Shaw Dep. 45:22-46:9; Cesarska Dep. 135:3-21; 136:18-22)

14.    Plaintiffs admit that the expediter assists the sous chef/chef and that he directs the runners where to take certain food.  Plaintiffs deny that the sous chef/chef is the expediter for that shift.  (*See supra* ¶ 13)   Plaintiffs deny that the expediters' main duty is to deliver food to tables and deny that the expediters deliver food throughout the entire meal.  (*See infra* ¶¶ 87-88)

15.    Plaintiffs admit that the expediter wore the same style of clothing as runners.  Plaintiffs deny that the expediter spends as much time running food as the other runners.  (*See infra* ¶¶ 87-88; *See also* Cesarska Supp. Decl. ¶ 18; Gillian Supp. Decl. ¶ 12)  To extent that an expediter ever ran food during his shift, it was an anomaly.  (*See infra* ¶ 88)

16.    Plaintiffs admit that busboys bring bread to the tables, re-fill water glasses, collect dirty plates, glasses and silverware, and re-set the table.  Other than the free bread for the table, Plaintiffs deny that busboys deliver food from the kitchen, except in rare occasions.  (Cesarska Supp. Decl. ¶ 19; Gillian Supp. Decl. ¶ 13)  The runners were the employees who delivered food to the tables.  (Cesarska Supp. Decl. ¶ 18; Gillian Supp. Decl. ¶ 12)

17.     Plaintiffs admit that busboys are assigned to work as stockers and coffee persons and admit that they wore the same general clothing with the caveat that stockers often did not wear aprons (as the busser did).  (Cesarska Supp. Decl. ¶ 16)  Plaintiffs deny that there was a true rotation of the stocker and coffee positions, rather certain individuals were typically assigned to work those positions.   (Cesarska Supp. Decl. ¶ 17; Gillian Supp. Decl. ¶ 11)  For example, individuals whom Fresco did not want interacting with the customers were assigned to be stockers.  (Cesarska Supp. Decl. ¶ 17; *See also* Scotto Dep. 143:4-23)

18.     Plaintiffs admit that as part of their job, stockers bring out clean dishes, glasses, and silverware to the side stations.  Plaintiffs deny that the role of the stocker is the same as a barback for a bar.  Stockers do not clear dishes or glasses from customers' tables, as barbacks do.  (Shaw Dep. 49:3-8; Cesarska Supp. Decl. ¶ 15; Gillian Supp. Decl. ¶ 10)  Plaintiffs deny that stockers perform the busser duties of bringing dirty dishes, glasses, and silverware from the restaurant floor back to the kitchen.  (Cesarska Supp. Decl. ¶ 15; Gillian Supp. Decl. ¶ 10; Shaw Dep. 32:3-10; 49:7-8; Cesarska Dep. 142:17-21; Gillian Dep. 162:11-14; *See also infra* ¶¶ 81-83, 85)

19.     Plaintiff deny the allegations in Paragraph 19.

Stockers do not help the runners with the delivery of food items to customers and do not run food during either the lunch or dinner shift.  (Shaw Dep. 32:11-16; Cesarska Dep. 142:4-7, 143:3-7; Gillian Dep. 162:2-7, 166:19-24; *See also infra* ¶¶ 81-83, 85)

20.     Plaintiffs deny the allegations in Paragraph 20.

For most of their shift, stockers are in the back/kitchen area near the dishwasher, and the only times they go on the floor is to restock the stocking stations.  (*See infra* ¶¶ 82-83)

21.     Plaintiffs admit that floor captains are typically on the floor during the service and that separate from their non-service duties, floor captains have performed the work alleged in Paragraph 21.

22.     Plaintiffs admit that Brent Drill participates in the tip pool, works throughout the Restaurant, and often performs floor captain duties.  However, to extent that Defendant asserts that Mr. Drill "is" a floor captain rather than one of Defendant's managers, Plaintiffs deny the assertion; Mr. Drill was always a manager.  (Gillian Dep. 32:10-11; Cesarska Dep. 57:8-10; Cesarska Decl ¶ 24; Gillian Decl. ¶22; Shaw ¶ 22; Cesarska Supp. Decl. ¶¶ 3-4; Gillian Supp. Decl. ¶¶ 2-3; Palmer Decl, Ex. H (employee handbook) at 2)

23.     Plaintiffs admit that two or three other individuals sometimes as a floor captain and that such individuals participate in the tip pool.

24.     Plaintiffs generally admit the allegations in Paragraph 24, but clarify that Mr. Vosilla typically acted as Fresco's party captain; however, others would perform the role when Mr. Vosilla was off.  (Cesarska Dep. 167:19-21; Scotto Dep. 137:23-138:4)

25.     Plaintiffs admit that the party captain is the contact person for the host and is in charge at the parties; however, Plaintiffs deny that he actually performs more than *de minimis* service.  (Cesarska Decl. ¶ 40; Gillian Decl. ¶ 34; Shaw Decl. ¶ 33; Gillian Dep. 140:20-24) Plaintiffs admit that the party captain creates the check at the end of the party.  Plaintiffs admit that the party captain would "plate" or put pasta onto plates in a back room, away from the customers.  (Gillian Dep. 140:10-18, 141:22-24; Cesarska Dep. 148:13-14; Vosilla Dep. 70:7-14; Cesarska Supp. Decl. ¶ 20; Gillian Supp. Decl. ¶ 14)  Plaintiffs deny that the party captain runs or serves the food, but admit that the party captain directs the waiters where to take plates of food.  (Cesarska Supp. Decl. ¶ 20; Gillian Supp. Decl. ¶ 14; Cesarska Dep. 148:11-12; 149:15-

18; Gillian Dep. 140:10-12; 142-23-143:3)  Plaintiffs deny that the party captain retrieves the

wine.  Bussers bring up the wine from downstairs.  (Cesarska Supp. Decl. ¶ 20)    Plaintiffs deny

that the party captain makes a master copy of the order, rather waiters make the master copy and

the party captain takes the copy to the kitchen.  (Cesarska Supp. Decl. ¶ 20; Gillian Supp. Decl.

¶14)   Plaintiffs admit that as party captain, Attilio Vosilla may on very rare occasions take food

or drink orders or pour wine, but deny that this is anything more than an anomaly.  (Cesarska

Supp. Decl. ¶ 20; Gillian Supp. Decl. ¶ 14; Cesarska Dep. 148:17-18, 148:21-23; 149:15-150:1;

Gillian Dep. 142:6-8).

As further evidence that Mr. Vosilla did perform more than *de minimis* service as a party

captain, he does not stay at the party the entire time.  (Cesarska Supp. Decl. ¶ 21; Gillian Supp.

Decl. ¶ 15.)  As he is the restaurant's night manager, he frequently is downstairs during parties.

*Id.*

26.     Plaintiffs admit that Mr. Vosilla participates in the tip pool while acting as a party

captain, and they are not aware of Mr. Vosilla participating in the tip pool on days in which he

did not act as a party captain.  Plaintiffs deny that the same is true for the other party captains.

By way of further response, the other individuals who occasionally acted as the party

captain take part in the tip pool when they are not party captains.  For example, Brent Drill often

acts as a floor captain and receives a large portion of the tip pool in this position.  *See supra* ¶ 22;

*See also* Def's 56.1[2] ¶ 39 (floor captain receives 50% more tips than waiter).

27.     Plaintiffs admit that Mr. Vosilla is the individual who typically creates the

employee schedule.  Plaintiffs admit that Defendant testified that Mr. Scotto looked at the drafted

staff schedule and could make changes to it; however, Plaintiffs deny that the testimony shows

---

[2] Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def's 56.1")

that Mr. Scotto regularly did more than simply look over the schedule.  (Vosilla Dep. 18:9-20:15)  Also, in all of their time working for Defendant, Plaintiffs never observed Mr. Scotto either reviewing the schedule or making changes to the schedule.  (Cesarska Supp. Decl. ¶ 22; Gillian Supp. Decl. ¶ 16.)

28.    Plaintiffs deny the assertions in Paragraph 28.

By way of further response, Plaintiffs state that when Mr. Vosilla is on vacation, Mr. Drill handles scheduling.  (Cesarska Decl. ¶ 25; Gillian Decl. ¶ 23; Cesarska Dep. 58:4-18; 61:11-62:1; Gillian Dep. 34:1-20)  Further, Mr. Drill can make changes to the existing schedule, even when Mr. Vosilla was not on vacation.  (Cesarska Decl. ¶ 25; Gillian Decl. ¶ 23; Scotto Dep. 57:19-22)

29.    Plaintiffs admit that Mr. Vosilla is a manager; however, to the extent that it is asserted by Defendant, Plaintiffs deny that Mr. Vosilla serves as a manager in a temporary capacity.  Plaintiffs deny that Mr. Vosilla does not participate in the tip pool as a manager.

By way of further response, Mr. Vosilla is always a manager at Fresco, and as a manager he receives a portion of the tip pool.   (Cesarska Supp. Decl. ¶¶ 3-4; Gillian Supp. Decl. ¶¶ 2-3; Cesarska Decl. ¶¶ 34, 41; Gillian Decl. ¶¶ 29, 35; Shaw Decl. ¶¶ 29, 34; Scotto Dep. 30:12-13; Vosilla Dep. 15:8-13, 70:7-71:7.  *See also* Cesarska Supp. Decl. ¶ 21, Gillian Supp. Decl. ¶ 15 (At the parties at which he was a captain, Mr. Vosilla would have to go downstairs to attend to things because he was the restaurant's night manager.))

30.    Plaintiffs admit that Mr. Vosilla is a manager and that he reviews cash-out paperwork.

31.    Plaintiffs admit that allegation in Paragraph 31.

32.     Plaintiffs admit that Mr. Vosilla is a manager and that amongst his many duties, he makes adjustments to checks, makes sure that the food is being delivered by servers in a timely manner, assists in service, shuts down the computers, and locks up the restaurant.

33.     Plaintiffs deny the allegations in Paragraph 31, although they admit that the servers perform the calculations based upon the tip distribution formula and fill out the tip pool sheets.  (*See* Gillian Dep. 181:11-182:6)

By way of further explanation: Defendant requires the tipped employees to participate in Defendant's tip pool; however, the tipped employees never approved the distribution of the tips in the pool.  (Cesarska Decl. ¶ 15; Gillian Decl. ¶ 14; Shaw Decl. ¶ 14)  In addition, Defendant's managers Brent Drill and Attilio Vosilla improperly retain portion of the tips from the tip pool. *See infra* ¶ 52.

Plaintiffs further deny that Defendant accurately represents the testimony of Milena Cesarska in her deposition.  Plaintiff Cesarska was asked whether there were any individuals other than the people that she had previously testified to [which included managers Brent Drill and Attilio Vosilla] who she believed were managers who took part in the tip pool.  (Cesarska Dep. 166:12-19).  Ms. Cesarska responded "No", there were no other managers in the tip pool other than those persons she previously testified concerning.  Ms. Cesarska previously testified that Brent Drill and Attilio Vosilla were managers who received a portion of the tips (Cesarska Dep. 39:15-40:12, 77:10-17.)

34.     Plaintiffs admit that the tips earned by tipped employees working a shift at Defendant's Fresco by Scotto location are pooled together; however, Plaintiffs deny that the tips are all distributed to the employees who participated in the service.  The tips are also distributed to individuals who performed no or *de minimis* service.  (*See supra* ¶¶ 25-26; *infra* ¶¶ 80-88)

35.    Plaintiffs admit the allegations in Paragraph 35, except deny that all of the individuals who receive money from the tip pool are tip eligible.  (*See supra* ¶¶ 7-9, 22, 25-29; *infra* ¶¶ 50-88)

36.    Plaintiffs admit the allegations in Paragraph 36.

37.    Plaintiffs admit the allegations in Paragraph 37.

38.    Plaintiffs deny the allegations in Paragraph 38.

By way of further explanation, at the end of each waiter's shift, s/he presents the bartender with her/his cash register receipts, the bartender provides the waiter with the cash equivalent of the tips, and each waiter gives that cash to the late waiter.  (Cesarska Dep. 91:22-92:4; Cesarska Supp. Decl. ¶ 23; Gillian Supp. Decl. ¶ 17)

39.    Plaintiffs admit the allegations in Paragraph 39; however, they deny that all job positions have been listed.   Bartenders receive 1 point in the tip pool and expediters receive 0.75 points.  (Cesarska Supp. Decl. ¶¶ 11, 13; Gillian Supp. Decl. ¶¶ 6, 8)

40.    Plaintiffs admit the allegations in Paragraph 40.

41.    Plaintiffs admit the allegations in Paragraph 41.

42.    Plaintiffs admit that the tips, gratuities, and service charges earned by tipped employees working a shift at Defendant's Fresco by Scotto location are pooled together; however, Plaintiffs deny that the tips are all distributed to the employees who are 'service employees'.  (*See supra* ¶¶ 7-9, 22, 25-29; *infra* ¶¶ 50-88)

43.    Plaintiffs deny the allegations in Paragraph 43.

By way of further explanation, there have been waiters who complained to Mr. Scotto about non-tipped employees participating in the tip pool.  (Cesarska Supp. Decl. ¶ 24)

44.    Plaintiffs deny the allegations in Paragraph 44.

By way of further explanation, Defendant requires the tipped employees to take part in Defendants' tip pool; however, the tipped employees were never given an opportunity to approve how their tips would distributed.  (Cesarska Decl. ¶ 15; Gillian Decl. ¶ 14; Shaw Decl. ¶ 14)  As a result, Defendant demands the payment of tipped employees' tips which are used to compensate management and non-service employees.  (*See infra* ¶¶ 52, 80)  Further, there have been waiters who complained to Mr. Scotto about non-tipped employees participating in the tip pool.  (*See supra* ¶ 43)

45.     Plaintiffs deny the allegations in Paragraph 45.

By way of further explanation, as evidenced by Plaintiffs' experience, Mr. Scotto does not review with each new hire how they will be paid.  (Cesarska Supp. Decl. ¶ 25; Gillian Supp. Decl. ¶ 18)  Further, Mr. Scotto is not present at the hiring of all employees.  (*See* Cesarska Supp. Decl. ¶ 6)

46.     Plaintiffs admit that tipped employees' paystubs represents that the employees are paid at an hourly rate equal to the tipped minimum wage, *i.e.* Defendants took the tip-credit for employees.  (*See* Cesarska Decl. ¶ 14; Gillian Decl. ¶ 13; Shaw Decl. ¶ 13; Gelman Dep. 17:18-19.)  Plaintiffs admit that the paystubs include the tips that tipped employees' are allowed to take home from their shift working at the Fresco by Scotto location.  Plaintiffs otherwise deny the allegations in Paragraph 46.

By way of further explanation, tipped employees are not paid for all of their wages worked, and as a result, are not paid the minimum wage for all hours worked, and the amount of hourly wages listed on the paystubs do not reflect the tipped minimum wage for all hours worked.  (*See* Cesarska Decl. ¶¶ 9, 11, 12; Gillian Decl. ¶¶ 8, 10, 11; Shaw Decl. ¶¶ 8, 10, 11) As a portion of tipped employees tips are improperly distributed to managers and non-service

employees, tipped employees are not paid all of their tips earned.  (*See infra* ¶¶ 52, 80)
Accordingly, tipped employees' paystubs do not show all tips earned.

47.     Plaintiffs deny that Mr. Scotto arranged for waiters to speak with new hires about
the tip pool or the tip payout process.

By way of further explanation, Mr. Scotto did not arrange for a waiter to explain the tip
pool or tip payout process to either Plaintiff, and neither Plaintiff ever observed Mr. Scotto do
this for other waiters.  (Cesarska Supp. Decl. ¶ 26; Gillian Supp. Decl. ¶ 19)

**Plaintiffs' Counter Statement of Material Facts in Opposition to Defendant's Partial
Motion for Summary Judgment**

48.     Defendant's company handbook (or "policy book") was created by Defendant's
owners and management.  (Scotto Dep. 82:18-83:21).

49.     The company handbook states that Anthony Scotto, Jr., Brent Drill and Attilio
Vosilla are the restaurants' managers.  (Palmer Decl., Ex. H at 2)  This handbook has been in
effect since 2007.  *Id*. at 1

50.     Attilio Vosilla and Brent Drill are long-time managers at Fresco by Scotto.
(Cesarska Decl. ¶ 24, 34; Gillian Decl. ¶22, 29; Shaw Decl. ¶¶ 22, 29; Cesarska Supp. Decl.
¶2-3; Gillian Supp. Decl. ¶2; Scotto Dep. 25:2-20, 30:12-13, 44:6-8; Vosilla Dep. 15:8-13)  They
are always managers and have managerial authority, regardless of whether they are performing
the duties of floor or party captains.  (Cesarska Supp. Decl. ¶ 4 Gillian Supp. Decl. ¶ 3)

51.     Mr. Drill typically works from 10 a.m. to 9 p.m. at Fresco.  (Drill Dep. 14:16-
15:9).  Mr. Vosilla works nights at Fresco.  (Vosilla Dep. 16:11-15; Scotto Dep. 30:12-13)
Throughout their entire shift they

52.     Managers Attilio Vosilla and Brent Drill receive a portion of the tips from the tip-pool.  (Cesarska Decl. ¶¶ 24, 41; Gillian Decl. ¶¶ 22, 34-35; Shaw Decl. ¶¶ 22, 33-34; Vosilla Dep. 70:7-71:7; *See also supra*  ¶¶ 22, 25, 29)

53.     Mr. Drill and Mr. Vosilla supervise and manage all tipped employees.  (Cesarska Decl. ¶¶25, 34; Gillian Decl. ¶¶ 23, 29; Shaw Decl. ¶¶ 23, 29; Scotto Dep. 28:4-7, 36:21-23; Vosilla Dep. 15:14-19, 17:10-11)   Mr. Drill and Mr. Vosilla monitor tipped employees performance, make sure that employees are acting property, and when necessary, correct employees, including by giving oral warnings/discipline.  (Cesarska Decl. ¶¶ 25, 29, 34, 36; Gillian Decl. ¶¶23, 29; Shaw Decl. ¶¶ 23, 29; Cesarska Dep. 18:20-20:4; Scotto Dep. 37:23-39:3; Drill Dep. 11:6-9, 12:13-21; Vosilla Dep. 55:16-20, 60:3-24)   (Fresco never disciplines tipped employees in writing; discipline is always oral.  (Scotto Dep. 171:20-172:2))

54.     Mr. Drill and Mr. Vosilla monitor and oversee to make sure that employees perform their end-of-shift duties and review employees' cash outs.  (Cesarska Decl. ¶¶ 25, 34; Gillian Decl. ¶¶ 23, 29; Shaw Decl. ¶¶ 23, 29; Scotto Dep. 101:20-103:4, Vosilla Dep. 44:6-8, Drill Dep. 30:3-5)

55.     Mr. Drill and Mr. Vosilla train new employees.  (Cesarska Decl. ¶¶ 30, 37; Gillian Decl. ¶¶ 24, 30; Shaw Decl. ¶¶ 24, 29; Cesarska Supp. Decl. ¶ 10; Gillian Supp. Decl. ¶ 5; Vosilla Dep. 60:3-24; Drill Dep. 52:11-13, 70:25-71:13)

56.     Managers Drill and Vosilla have the authority to send employees' home, including punishing employees who are late.  (Cesarska Decl. ¶¶ 29, 36; Gillian Decl. ¶¶ 24, 30)

57.     Mr. Drill and Mr. Vosilla hold pre-shift meetings in preparation for each shift and to address employee complaints and service and restaurant issues.  (Cesarska Decl. ¶¶ 26, 35;

Gillian Decl. ¶¶ 25, 31; Shaw Decl. ¶¶ 26, 32 Scotto Dep. 31:14-16, 31:19-33:14; Vosilla Dep. 36:7-25; Drill Dep. 20:13-21)

58.     Mr. Vosilla posted the side work employees are required to perform.  (Scotto Dep. 67:23-68:7)

59.     Brent Drill supervises employees to make sure they are doing their side work. (Scotto Dep. 76:6-25)

60.     Mr. Drill is "in charge of the service for the entire restaurant."  (Scotto Dep. 188:14-15; *See also* Scotto Dep. 134:10-11)

61.     Owner Anthony Scotto is often not present at the restaurant, and when he is not present during a dinner/night shift, Mr. Vosilla assumes complete control of the restaurant. (Scotto Dep. 31:6-13; 93:7-94:2)

62.     As managers, Messrs. Vosilla and Drill supervise the staff to make sure that employees are properly wearing their uniforms and describing the specials properly.  (Scotto Dep. 26:10-13; 162:3-7)

63.     Waiters are required to get approval from either Mr. Drill or Mr. Vosilla prior to closing down their section at the end of the shift and can not leave until their section is completely closed down.  (Cesarska Decl. ¶¶ 31, 38; Gillian Decl. ¶¶ 27, 33; Shaw Decl. ¶¶ 25, 31)

64.     Both Mr. Vosilla and Mr. Drill handle and review employees' cash out receipts. (Cesarska Decl. ¶¶ 25, 34; Gillian Decl. ¶¶ 23, 29; Shaw Decl. ¶¶ 23, 29; Scotto Dep. 101:20-103:4)

65.     Managers Vosilla and Drill have access and use the office computers which contain company and employment records.  (Drill Dep. 13:8-14:15; Gelman Dep. 44:23-45:14; *See also* Scotto 26:10-15)

66.     Mr. Drill sometimes prints the employee schedule for Fresco.  (Drill Dep. 13:15)

67.     Mr. Vosilla was intimately involved in the creation and modification of the employment handbook and is personally responsible for making sure that employees sign the company handbook.  (Scotto Dep. 82:18-83:21, 91:25-92:10; Vosilla Dep. 41:4-11)  Mr. Vosilla signed the company handbook on behalf of the company.   (Scotto Dep. 92:11-13; Vosilla Dep. 41:12-14; *See, e.g.* Palmer Decl., Ex. I (handbook signature page))

68.     Mr. Vosilla signs and certifies Form I-9s for employees as the "Employer or Authorized Representative."  (Palmer Decl., Ex. J (Form I-9))

69.     Mr. Drill represented to the outside world that he was a manager on his "Linked-in" professional networking page.  (Palmer Decl., Ex. K (Linked-in page))

70.     Unlike the tipped employees on the floor, Mr. Vosilla and Mr. Drill are paid a fixed weekly salary, in addition to their cuts of the tip-pools.  (Gelman Dep. 26:9-28:2; Drill Dep. 42:3-18)

71.     In their management positions, Mr. Vosilla and Mr. Drill always wear suits, rather than the uniform worn by the tipped employees.  (Cesarska Decl. ¶¶ 33, 34; Gillian Decl. ¶¶ 28, 32; Shaw Decl. ¶¶ 28, 30; Cesarska Supp. Decl. ¶ 5; Gillian Supp. Decl. ¶ 4; Scotto Dep. 26:15-18, 180:25:-181:2; Drill Dep. 15:12-18.)

72.     Mr. Vosilla and Mr. Drill handle customer complaints and issues and are authorized to void items, such as food that has been improperly ordered by a waiter, on customer's checks.  (Cesarska Decl. ¶¶ 25, 26, 35, 37; Gillian Decl. ¶¶ 25, 30, 31; Shaw Decl. ¶¶

24, 26, 30, 32; Cesarska Dep. 169:13-22; Scotto Dep. 30:23-24, 37:14-16, 135:19-23; Drill Dep. 32:20-21)

73.     Mr. Drill is authorized to decide who sits in the VIP section.  (Scotto Dep. 19:17-20:17)

74.     At the end of the day, Mr. Vosilla shuts down the computers and locks up the restaurant.  (Scotto Dep. 30:21-31:5)

75.     Managers are not listed on the employee telephone list, which lists "waiters/capt[ains]", "bartenders", and "hosts", rather managers are on the company's direct phone dial.  (Scotto Dep. 180:7-24; *See* Palmer Decl., Ex. L (employee telephone list))   Mr. Vosilla and Mr. Drill are not listed on the employee telephone list.  (Drill Dep. 62:19-63:5; *See* Palmer Decl., Ex. L)

76.     Managers don't eat at the same time as the tipped employees, rather they eat at the end of the shift.  (Scotto Dep. 89:6-12)  Brent Drill eats after his shift ends.  (Scotto Dep. 91:12-13)

77.     At Fresco, there are only three individuals who meet with potential new tipped employees prior to their employment: Anthony Scotto, Attilio Vosilla, and Brent Drill.  (Drill Dep. 49:24-50:4)

78.     Fresco assigns one or more bussers to work as a stocker for a whole shift.  (Scotto Dep. 142:21-143:3; Cesarska Supp. Decl. ¶ 17; Gillian Supp. Decl. ¶ 11)

79.     For some shifts, a runner is assigned to work a whole shift as an expediter. (Scotto Dep. 147:7-16)

80.     Stockers and expediters receive a portion of the Fresco tip pool.  (Cesarska Decl. ¶¶ 17, 20; Gillian Decl. ¶¶ 16, 19; Shaw Decl. ¶¶ 16, 18; *See supra* ¶ 10)

81.     The stocker's job is to restock glasses, silverware, and plates.  (Cesarska Decl. ¶17; Gillian Decl. ¶ 16; Shaw Decl. ¶ 16)

82.     Stockers spend the majority of their shift in the kitchen, getting the glasses, silverware and plates from the dishwasher, wiping down/drying the items, and then stacking them.  (Gillian Dep. 161:1-8; Scotto Dep. 145:4-18; Cesarska Supp. Decl. ¶ 14; Gillian Supp. Decl. ¶ 9))

83.     Stockers are only on the floor to restock stocking stations.  (Cesarska Decl. ¶ 18; Gillian Decl. ¶ 17; Cesarska Supp. Decl. ¶ 15; Gillian Supp. Decl. ¶ 10; Gillian Dep. 161:9-11)

84.     Defendant will assign busboys who Defendant does not want to be on the dining floor to work as a stocker.  (Scotto Dep. 143:4-13; Cesarska Supp. Decl. ¶ 17)

85.     Stockers do not interact with customers or perform any direct customer service. (Cesarska Decl. ¶ 19; Gillian Decl. ¶ 18; Shaw Decl. ¶ 17; Scotto Dep. 143:4-23)

86.     During his shift, a Fresco expediter stands next to one of the chefs in the kitchen. (Cesarska Decl. ¶ 21; Gillian Decl. ¶ 20; Shaw Decl. ¶ 19; Scotto Dep. 146:21-23; Drill Dep. 60:10-23; Cesarska Dep. 137:12-20, 141:4-5)

87.     The expediter's primary duty is to provide assistance to the chef, and act as an intermediary between the kitchen and the runners.  (Cesarska Decl. ¶ 21; Gillian Decl. ¶ 20; Shaw Decl. ¶ 19)  In performing these duties, the expediter does not interact with customers or perform direct customer service.  (Cesarska Decl. ¶ 21; Gillian Decl. ¶ 20; Shaw Decl. ¶ 19)

88.     There may be rare occasions when an expediter runs food to a table; however, such an event is an anomaly.  (Cesarska Decl. ¶ 22; Shaw Decl. ¶ 20; Shaw Dep. 53:21-54:4; Cesarska Dep. 135:8-12, 137:12-138:15; 140:23-141:5; 141:19-142:7)

89.    As expediters, the individuals performed no – or virtually no – direct customer service during their shifts.  (Cesarska Decl. ¶ 22; Shaw Decl. ¶ 20)

90.    Individuals who come in for training are considered employees of Fresco and are paid the minimum wage during the training process.  (Scotto Dep. 140:3-12, 142:15-18)

91.    Most of the time, new employees pass the training and continue on as Fresco employees.  (Scotto Dep. 142:8-11)

92.    Fresco charges a minimum 20% gratuity for private parties.  (Vosilla Dep. 51:11-13)


Dated: New York, New York                      Respectfully submitted,
       April 1, 2011

                                               _/s/ Michael D. Palmer ___
                                               Michael D. Palmer (MP-5090)
                                               JOSEPH, HERZFELD, HESTER &
                                               KIRSCHENBAUM LLP
                                               233 Broadway, 5th Floor
                                               New York, NY 10279
                                               (212) 688-5640
                                               (212) 688-2548 (fax)

                                               *Attorneys for Plaintiffs, proposed collective
                                               action members and proposed class*