UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GARY GILLIAN and MILENA CESARSKA    INDEX NO. 1:10-cv-06056-JSR
on behalf of themselves and others similarly
situated,

            Plaintiffs,

v.

STARJEM RESTAURANT CORP. d/b/a/
FRESCO BY SCOTTO,

           Defendant.
-------------------------------------------------------------x

## DECLARATION OF MILENA CESARSKA

Milena Cesarska, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am a former employee of Defendant (Fresco by Scotto). I submit this declaration based on personal knowledge unless indicated otherwise.

2. From approximately June 2006 to November 2010, I worked for Defendant.

3. Throughout my entire employment, I worked as a waiter/server at Fresco by Scotto. (Earlier in my employment, I also sometimes performed some work as a host.)

4. I worked full-time for Defendant; however, I was consistently not paid for all hours that I worked.

5. Defendant did not record the hours that I worked during my employment.

6. Further, Defendant never recorded the time of the day that my workday started nor the time of the day that my workday ended.

7. Based upon my observations and experiences working for Defendant and conversations with other employees, I know that the other tipped employees (for example, waiters, bussers, and runners) who worked for Defendant did not have their hours recorded by Defendant. Additionally, Defendant did not record the time of the day that the other tipped employees started their workday or ended their workday.

8. Defendant paid me and the other tipped employees a set amount of hours for working a shift of work, regardless of the actual length of time worked during that shift. For much of my employment, the set amount of time that Defendant paid per shift was five hours per shift worked. (Early in my employment, the amount of hours I was paid per shift may have been different, but Defendant still failed to pay me for all hours worked.)

9. I regularly worked shifts that lasted for more hours than I was paid; accordingly, on many occasions, I was not paid for all of the hours that I worked.

10. For example, most dinner shifts started at 3:30 or 4:00 p.m., and when I worked dinners, I regularly worked till around 10:00 p.m. or later. The other tipped employees worked dinner shifts of similar length.

11. Further, when I or other tipped employees worked a party for Fresco by Scotto at their next door location called 'Fresco on the go', we were not paid any money for our hours worked.

12. Based upon my observations and experiences working for Defendant, knowledge of the Defendant's method of compensating employees, and conversations with other employees, I also know that other tipped employees were regularly not paid for all of their hours worked.

13. Of course, on occasions where tipped employees worked over 40 hours in the workweek and were not paid for all hours worked, the hours should have been paid as overtime. During my employment, I often worked over 40 hours per week.

14. Throughout my employment with Defendant, my hourly rate of pay was less than the federal and state minimum wage. (Defendant took a credit against my wages because I earned tips.) For example, in 2010, I was paid less than $7.25 per hour.

15. Defendant required that I and the other tipped employees participate in a tip pool. I never was given any opportunity to approve of the distribution of the tips in the pool.

16. Defendant's mandatory tip-pool consistently included several non-service employees.

17. The tip-pool regularly included one or more individuals called "stockers" whose job during the shift was to restock glasses, silverware, and plates. They also wiped down silverware and glasses.

18. During most of their shift the stockers would be in the back/kitchen area near the dishwasher. At times, they would be at a stocking station to restock items.

19. During their shifts, the stockers did not interact with customers or perform direct customer service.

20. For some shifts, the tip-pool included an individual who was designated as the "expediter" for the shift.

21. As the expediter, the individual's primary duty was to stand in the kitchen next to one of the chefs, assist him, and act as an intermediary between the kitchen and the runners. In performing his primary duty, the expediter did not interact with customers or perform direct customer service.

22. During my employment, I never observed the expediter running food or performing any other direct customer service.

23. Managers also improperly took part in the tip pool.

24. Brent Drill was a manager at the restaurant, and he regularly received a portion of the tip pool.

25. Amongst his duties, Mr. Drill supervised and directed the tipped employees on the floor, corrected employees when they acted improperly, monitored that employees performed their end-of-lunch-shift duties, including a "cash out", prior to leaving, and handled employee scheduling in the restaurant when manager Attilio Vosilla was on vacation. He also had authority to make changes to the existing schedule, even when Mr. Vosilla was not on vacation. Mr. Drill could void items, such as food that was improperly ordered by a waiter, on customer's checks. (Fresco tipped employees did not have authority to void items.)

26. Brent Drill held pre-shift meetings in preparation for the lunch shift and dealt with customer complaints.

27. In his position as manager, Mr. Drill also had the authority to interview and hire employees. I was interviewed for my job by Mr. Drill, and at the end of the interview, he told me that I could come in for training. (Mr. Drill was the only individual who interviewed me or notified me that I could come in for training.) I also witnessed Mr. Drill interview other tipped employees, including bussers and another waiter, to work for Fresco.

28. I witnessed Mr. Drill terminate a Fresco waiter.

29. Mr. Drill had the authority to send employees home, including when they were late, as a punishment.

30. Mr. Drill provided training to new tipped employees.

4

31. Waiters were required to get approval from Mr. Drill prior to closing down their section at the end of the lunch shift. You were not permitted to leave until your section was completely closed down and all of your end-of-lunch-shift duties were completed.

32. Mr. Drill was also involved in creating/changing the wine list which was used by tipped employees as part of their jobs.

33. Also, as a manager, Mr. Drill wore a suit, unlike the tipped employees.

34. Attilio Vosilla was another manager at the restaurant. Mr. Vosilla supervised and directed the tipped employees on the floor, corrected employees when they acting improperly, handled employee scheduling in the restaurant, and monitored that employees performed their end-of-dinner-shift duties, including a "cash out", prior to leaving. As a manager, Mr. Vosilla wore a suit at the restaurant.

35. Mr. Vosilla held pre-shift meetings in preparation for the dinner shift and dealt with customer complaints.

36. Mr. Vosilla also had the authority to send employees home, including when employees were late, as a punishment.

37. Mr. Vosilla also provided training to new tipped employees and could void items on customer checks.

38. Waiters were required to get approval from Mr. Vosilla prior to closing down their section at the end of the dinner shift. You were not permitted to leave until your section was completely closed down and all of your end-of-dinner-shift duties were completed.

39. I witnessed Mr. Vosilla hire and terminate tipped employees at Fresco.

40. Mr. Vosilla also acted as the party captain for private parties at Fresco by Scotto, which meant that he was the manager at the party, but he performed little to no service work at the party.

41. As a party captain, Mr. Vosilla received a portion of the gratuity received from the parties.

42. I regularly worked doubles (i.e. a lunch and dinner shift in the same day) at the restaurant. When I did so, the length of time between the beginning of my day and the end of my day was more than 10 hours. On those occasions, I was not compensated an additional hour's pay at the minimum wage rate.

43. Based upon my observations and experiences working for Defendant, I know that the other tipped employees sometimes worked doubles extending over a 10 hour period of time, yet were not compensated an additional hour's pay at the minimum wage rate.

44. Defendant required tipped employees to purchase a uniform from them. We were required to obtain a specific shirt, tie and vest from Defendant; no variation in dress was permitted.

45. Tipped employees were not reimbursed by Defendant for the cost of the uniform. Further, Defendant did not offer laundering services for the uniform, and they did not reimburse us for the cost to launder the uniforms.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2011

*Milena Cesarska*
Milena Cesarska